**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| DESMOND BANKS, individually and on behalf of a class of similarly situated individuals,<br><br>                       Plaintiff,<br>     v.<br><br>COSTAR REALTY INFORMATION, INC.,<br><br>             Defendant. | Case No. 4:25-cv-00564 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION & BACKGROUND ........................................................................................1

ARGUMENT .........................................................................................................................1

I.      Plaintiff Does Not Allege CoStar Is A "Video Tape Service Provider." ............................2

II.     Plaintiff Does Not Allege He Is A "Consumer." ............................................................4

III.    Plaintiff Does Not Allege That CoStar Knowingly Disclosed PII. ...................................6

        A.     Plaintiff Fails To Allege Any Information Constitutes PII. ...................................6

        B.     CoStar Did Not Knowingly Disclose PII. ...........................................................8

IV.     Plaintiff Fails to Allege Actual Damages. ....................................................................8

V.      The VPPA Violates The First Amendment. .................................................................10

        A.     The VPPA Imposes Suspect Burdens. .............................................................11

        B.     The VPPA Fails First Amendment Scrutiny. .....................................................12

CONCLUSION ...................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................1, 2

*Ballinger v. City of Oakland*,
  398 F. Supp. 3d 560 (N.D. Cal. 2019), *aff'd*, 24 F.4th 1287 (9th Cir. 2022) .........................13

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  591 U.S. 610 (2020).............................................................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................................1

*Cantu v. Sunrun Inc.*,
  No. 23-CV-974-JO-AHG, 2023 WL 11795670 (S.D. Cal. Nov. 22, 2023) .............................4

*Cantu v. Tapestry, Inc.*,
  No. 22-cv-1974-BAS-DDL, 2023 WL 4440662 (S.D. Cal. Jul. 10, 2023) .............................4

*Carroll, et al., v. General Mills, Inc.*,
  No.CV231746DSFMRWx, 2023 WL 4361093 (C.D. Ca. Jun. 26, 2023) ...............................3

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557 (1980)..............................................................................................................12

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010)..............................................................................................................11

*City of Ladue v. Gilleo*,
  512 U.S. 43 (1994)................................................................................................................14

*Dacostagomez-Aguilar v. U.S. Att'y Gen.*,
  40 F.4th 1312 (11th Cir. 2022) ...............................................................................................9

*Doe v. Chao*,
  540 U.S. 614 (2004)................................................................................................................9

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ...............................................................................................6, 7

*Ellis v. The Cartoon Network, Inc.*,
  803 F.3d 1251 (11th Cir. 2015)...............................................................................................5

*Fanin v. U.S. Dep't of Veterans Affs.*,
   572 F.3d 868 (11th Cir. 2009) ....................................................................9, 10

*FF Cosms. FL, Inc. v. City of Miami Beach*,
   866 F.3d 1290 (11th Cir. 2017) ..........................................................................12

*Gale Force Roofing & Restoration, LLC v. Brown*,
   548 F. Supp. 3d 1143 (N.D. Fla. 2021).................................................................15

*Gardner v. Me-TV National Limited Partnership*,
   132 F.4th 1022 (7th Cir. 2025) ..............................................................................6

*Ghanaat v. Numerade Labs, Inc.*,
   No. 23-CV-00833, 2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) ..........................8

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
   527 U.S. 173 (1999)...............................................................................................14

*Heyman v. Cooper*,
   31 F.4th 1315 (11th Cir. 2022) ...............................................................................9

*Knowles v. City of Waco, Tex.*,
   462 F.3d 430 (5th Cir. 2006) .................................................................................12

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016).................................................................................7, 8

*Osheske v. Silver Cinemas Acquisition Co.*,
   132 F.4th 1110 (9th Cir. 2025) ................................................................................4

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015).........................................................................................11, 12

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015)......................................................................6

*Rodriguez v. Delta T LLC*,
   No. 2:23-CV-03717-HDV-AGR, 2023 WL 9419152 (C.D. Cal. Dec. 12,
   2023) ........................................................................................................................4

*Rubin v. Coors Brewing Co.*,
   514 U.S. 476 (1995)...............................................................................................14

*Salazar v. National Basketball Ass'n*,
   118 F.4th 533 (2d Cir. 2024) ...................................................................................6

*Salazar v. Paramount Glob.*,
   133 F.4th 642 (6th Cir. 2025) .............................................................................5, 6

*Solomon v. Flipps Media, Inc.*,
No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023),
*aff'd*, No. 23-7597-CV, 2025 WL 1256641 (2d Cir. May 1, 2025) ..........................................8

*Solomon v. Flipps Media, Inc.*,
No. 23-7597-CV, 2025 WL 1256641 (2d Cir. May 1, 2025) .................................................7, 8

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)...................................................................................................11, 12, 14

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023).................................................................................15

*U.S. West, Inc. v. FCC*,
182 F.3d 1224 (10th Cir. 1999) .......................................................................................11, 13

*United States v. Dawson*,
64 F.4th 1227 (11th Cir. 2023) ...............................................................................................10

*United States v. Palomares*,
52 F.4th 640 (5th Cir. 2022) .....................................................................................................9

*United States v. Sparks*,
806 F.3d 1323 (11th Cir. 2015) ...............................................................................................13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .........................................................................2, 3, 15

*Wollschlaeger v. Governor of Fla.*,
848 F.3d 1293 (11th Cir. 2017) ...............................................................................................12

*Wooten v. La Salle Corr.*,
No. 7:22-CV-000148 (WLS), 2024 WL 4132331 (M.D. Ga. Sept. 10, 2024) ........................13

**Statutes**

5 U.S.C. § 552a(g)(4)(A) ............................................................................................................9

18 U.S.C. § 2710..........................................................................................................................1

18 U.S.C. § 2710(a)(1).................................................................................................................4

18 U.S.C. § 2710(a)(3)..............................................................................................................6, 14

18 U.S.C. § 2710(a)(4).........................................................................................................2, 3, 14

18 U.S.C. § 2710(b)(1) .........................................................................................................2, 6, 11

18 U.S.C. § 2710(b)(2) .................................................................................................................2

18 U.S.C. § 2710(c) ................................................................................................2

18 U.S.C. § 2710(c)(2)(A) ......................................................................................8

Privacy Act of 1974 ..........................................................................................9, 10

U.S. Const. amend. I. Laws ...................................................................................10

**Rules**

Fed. R. Civ. P. 12(b)(1)..........................................................................................15

Fed. R. Civ. P. 12(b)(6).......................................................................................1, 15

**Other Authorities**

1988 U.S.C.C.A.N. 4342-1 ......................................................................................6

1988 U.S.C.C.A.N. 4342-4 ....................................................................................13

1988 U.S.C.C.A.N. 4342-9 ......................................................................................6

First Amendment .......................................................................................... *passim*

Fourth Amendment ................................................................................................13

Black's Law Dictionary .........................................................................................10

Black's Law Dictionary (10th ed. 2014) .................................................................9

Black's Law Dictionary (12th ed. 2024)..................................................................4

*Damages*, *Black's Law Dictionary* (5th ed. 1979) ...............................................10

https://www.apartments.com ...................................................................................1

https://www.merriam-webster.com/dictionary/business (last visited May 12,
    2025) ..................................................................................................................2

https://www.merriam-webster.com/dictionary/livelihood (last visited May 12,
    2025) ..................................................................................................................2

S. Rep. No. 12 ..........................................................................................................6

S. Rep. No. 100-599..................................................................................................4

S. Rep. No. 100-599 at 2 ........................................................................................13

S. Rep. No. 100-599, at 4-5 ...................................................................................13

S. Rep. No. 599 ..................................................................................................................6

## INTRODUCTION & BACKGROUND

Defendant Costar Realty Information, Inc. ("CoStar") is a real estate information company that operates real estate platforms. (*See* ECF No. 1-1 ¶ 15.) CoStar operates a website, https://www.apartments.com (the "Website"), which connects users with real estate rentals. (*Id.*) Plaintiff Desmond Banks ("Plaintiff") alleges that he created a free account on the Website, and that CoStar shared his unspecified personal information and information about videos he viewed on the Website with Facebook through use of the Facebook Pixel,[1] allegedly in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710, *et seq.* (*Id.* ¶¶ 21, 34-37, 56.).

The VPPA was enacted in 1988, following a Washington newspaper report during the confirmation hearings for Judge Robert Bork which detailed 146 films his family had rented from a video store.  Consistent with several recent federal appellate decisions, the VPPA is inapplicable to the conduct alleged here. Plaintiff has not stated a claim pursuant to Fed. R. Civ. P. 12(b)(6) for four independent reasons: he has not alleged facts supporting that CoStar is a video tape service provider covered by the VPPA, that Plaintiff is a consumer under the VPPA, that the information allegedly disclosed constitutes personally identifiable information under the VPPA, or that he suffered any damages, and the VPPA in any event cannot withstand First Amendment scrutiny.

## ARGUMENT

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Instead, the court must examine only the

---

[1] Plaintiff's Complaint includes references to TikTok and unspecified third parties, but Plaintiff does not allege that any of his information was shared with any company other than Facebook. *See generally* ECF No. 1-1 ¶¶ 34-40 ("Facts Specific to Plaintiff").

well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. To state a claim under the VPPA, Plaintiff must allege that (1) CoStar is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer; (5) without obtaining the consumer's informed, written consent; and (6) the consumer has suffered actual damages. *See* 18 U.S.C. § 2710(b)(1); 18 U.S.C. § 2710(b)(2); 18 U.S.C. § 2710(c). Plaintiff's allegations fail to state a VPPA claim because he fails to plausibly allege that (1) CoStar is a video tape service provider; (2) Plaintiff is a consumer; (3) the alleged disclosures by CoStar are personally identifiable information ("PII"); or (4) he suffered "actual damages."

## I.    Plaintiff Does Not Allege CoStar Is A "Video Tape Service Provider."

A "video tape service provider" ("VTSP") is "any person, *engaged in the business*, in or affecting interstate or foreign commerce, *of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials* . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). The Complaint alleges that CoStar "provided prerecorded videos to Subscribers . . . through its Website." (ECF No. 1-1 ¶ 54.) But as Plaintiff acknowledges, CoStar "operates several different consumer real estate platforms" that "showcase available rental properties." (*Id.* ¶ 2.)

"Business" is commonly defined as "a usually commercial or mercantile activity engaged in as a means of livelihood." *See* "business" (def. 1a), https://www.merriam-webster.com/dictionary/business (last visited May 12, 2025). "Livelihood" is defined as "means of support or subsistence." *See* "livelihood" (def. 1), https://www.merriam-webster.com/dictionary/livelihood (last visited May 12, 2025). Thus, to be "engaged in the business" of a particular activity, that activity must be the company's means of support or subsistence. *See In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1221 (C.D. Cal.

2017) (to be "engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose"). In other words, delivering video materials must be "a focus of the defendant's work," and businesses which are only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id.* at 1221-22.

Plaintiff does not allege CoStar's means of support or subsistence is renting, selling, or delivering video materials, or that delivering video materials is the focus of CoStar's business. Rather, Plaintiff alleges that the focus of CoStar's business is "operat[ing] several different consumer real estate platforms" that "showcase available rental properties," that CoStar's "business model depends on attracting renters by showcasing properties," and that one of the means CoStar uses to advertise properties on its Website is through "videos for virtual tours." (*Id.* ¶¶ 2-3.) The fact that CoStar's website may use video as one of numerous means by which to advertise properties does not make CoStar "engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Video materials are not, in and of themselves, the focus of CoStar's business—operating a platform that connects housing-seekers with property owners and managers is the focus of CoStar's business, by Plaintiff's own allegations.

Numerous cases have reached the only sensible conclusion here—that simply using video as a means of advertising does not convert an entity into a "video tape service provider" when the focus of the defendant's business is not renting, selling, or delivering video materials in and of itself. *See Carroll, et al., v. General Mills, Inc.*, No.CV231746DSFMRWx, 2023 WL 4361093 at *3-4 (C.D. Ca. Jun. 26, 2023) (finding General Mills was not a VTSP where "[t]he few allegations

- 3 -

in the FAC about General Mills' business are conclusory" and "[n]othing suggests that Defendant's business is centered, tailored, or focused around providing and delivering audiovisual content."); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, *8 (S.D. Cal. Jul. 10, 2023); *Rodriguez v. Delta T LLC*, No. 2:23-CV-03717-HDV-AGR, 2023 WL 9419152,*4 (C.D. Cal. Dec. 12, 2023); *Cantu v. Sunrun Inc.*, No. 23-CV-974-JO-AHG, 2023 WL 11795670, *3 (S.D. Cal. Nov. 22, 2023). *Accord Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110 (9th Cir. 2025) (examining terms "rental, sale, or delivery" and "prerecorded video cassette tapes" and concluding that movie theaters are not "video tape service providers").

Legislative history reinforces this conclusion, which flows inescapably from the language of the statute. "The impetus for this legislation occurred when a weekly newspaper in Washington published a profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store." *See* S. Rep. No. 100-599 at 5. Congress explained that the law "prohibits *video stores* from disclosing…information that links the customer or patron to particular materials or services." *Id.* at 7 (emphasis added). Operating a platform designed to connect housing-seekers with property owners and managers is a far cry from operating a video rental store.

## II.    Plaintiff Does Not Allege He Is A "Consumer."

A "consumer" under the VPPA is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiff fails to allege that he rented, purchased, or subscribed to *any* goods or services. Rather, Plaintiff alleges he "was a Subscriber of Defendant's Website apartments.com after *registering for an account*." (ECF No. 1-1 ¶ 34 (emphasis added).) But the term "subscribe," when used for something other than signing one's name or manifesting agreement (neither of which makes sense in context here), typically requires giving money in exchange for "something regularly delivered." Black's Law Dictionary (12th ed.

2024). There are no allegations that Plaintiff paid money for anything or that his account registration resulted in the regular delivery of anything. *See Ellis v. The Cartoon Network, Inc.,* 803 F.3d 1251, 1257 (11th Cir. 2015) ("In our view, downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app. Importantly, such a user is free to delete the app without consequences whenever he likes, and never access its content again."). Moreover, there are no factual allegations supporting that the account is a "good" or "service." Without a single allegation showing that Plaintiff rented, purchased, or subscribed to any goods or services, Plaintiff cannot be a "consumer" of CoStar.[2]

Furthermore, Plaintiff does not allege that he is a consumer of *video materials* through his status as a free account holder. The Sixth Circuit recently held that to be a consumer, a plaintiff must subscribe to video cassette tapes or similar audio visual materials, holding:

> [T]here is an association between the terms "goods or services" and "audio visual materials." So viewing the provision as a whole reveals "a more targeted reading" than the one Salazar proposes. Even though—standing alone—the expression "goods or services" is not limited, its association with surrounding words cabins its meaning. The full definition of "consumer" in the statute does *not* encompass consumers of all "goods or services" imaginable, but only those "from a video tape service provider." This proviso tethers the definition of "consumer" to that of "video tape service provider." And that definition pinpoints the relevant "goods or services": those involved in the "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." ***So the most natural reading, which accounts for the context of both definitions, shows that a person is a "consumer" only when he subscribes to "goods or services" in the nature of "video cassette tapes or similar audio visual materials." Together, "text and context point to the same place:" the expression "goods or services" is limited to audiovisual ones.***

*Salazar v. Paramount Glob.,* 133 F.4th 642, 650–51 (6th Cir. 2025) (emphasis added) (internal citations omitted). Legislative history also supports this interpretation, explaining the VPPA "is

---

[2] CoStar does not charge individuals to create an account and does not sell items to any users.

drafted 'to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the [law]." *Id.* (quoting S. REP. 599, 12, 1988 U.S.C.C.A.N. 4342-1, 4342–9). This court should adopt the same approach[3] and dismiss Plaintiff's claim because his status as a free account holder on CoStar's website does not make him a consumer under the VPPA.

## III.     Plaintiff Does Not Allege That CoStar Knowingly Disclosed PII.

### A.     Plaintiff Fails To Allege Any Information Constitutes PII.

The VPPA states that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Unless a VTSP has provided notice and obtained consent, it is prohibited from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). "[T]he information disclosed by a video tape service provider must, at the very least, identify a *particular person*—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). The VPPA "views disclosure from the perspective of the disclosing party" and "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). As several appellate courts and the overwhelming majority of district courts nationwide have held, PII under the VPPA is "the kind of information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching

---

[3] *Contra Salazar v. National Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024); *Gardner v. Me-TV National Limited Partnership*, 132 F.4th 1022 (7th Cir. 2025). *NBA* and *Gardner* both looked only at whether the goods and services must be *audiovisual*, and did not address (because the defendants apparently did not raise) the predicate issues that CoStar raises here concerning whether the plaintiff is a "subscriber" of any "goods or services" at all.

behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). *See also Solomon v. Flipps Media, Inc.*, No. 23-7597-CV, 2025 WL 1256641 (2d Cir. May 1, 2025) (PII "encompasses information that would allow an ordinary person to identify a consumer's video-watching habits"); *Eichenberger*, 876 F.3d at 985.

Plaintiff has not alleged a disclosure of PII; his Complaint is rife with *legal conclusions*, not well-pled *facts* to establish that any alleged disclosure included PII. The entirety of Plaintiff's allegation concerning his own experience is that CoStar disclosed his "identity" to Meta. (ECF No. 1-1 ¶ 37, 40.) But there are no supporting factual allegations describing *what* was allegedly disclosed. Plaintiff's generalized references to "identity" are insufficient to establish that any information which meets the statutory definition of "personally identifiable information" was disclosed. And significantly, the image Plaintiff includes in the Complaint which he describes as "information in the form of a URL (as shown below), along with the identity of the Subscriber" is not, on its face, information which would readily permit an ordinary person to identify anyone at all, much less to identify a specific person and link that person to a specific video they viewed:



(*See* Image at ECF No. 1-1 ¶ 23).

Significantly, the only federal appellate court to address whether such transmissions to Facebook constitute PII under the VPPA has held that they do not. In *Solomon v. Flipps Media*, the Second Circuit explained that PII under the VPPA "encompasses information that would allow an ordinary person to identify a consumer's video-watching habits, but not information that only a sophisticated technology company could use to do so." 2025 WL 1256641, at *9. Applying this standard to the exact same type of computer code transmission that Plaintiff includes as an image in the Complaint in this case, the Second Circuit held it was "implausible that an ordinary person would look at the" information "and understand it to be" information which identifies a video title and a specific person. *Id.* at *10-11. [4] *See also In re Nickelodeon*, 827 F.3d at 283 ("To an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person."). Defendant respectfully submits that this Court should do the same.

**B.     CoStar Did Not Knowingly Disclose PII.**

Plaintiff does not allege that CoStar *knew* whether he, or any other user, had a Facebook account, much less whether those accounts contained PII. Therefore, Plaintiff does not plausibly allege that CoStar *knowingly* disclosed his identity, let alone his PII, to Facebook.

**IV.     Plaintiff Fails to Allege Actual Damages.**

Under the VPPA, a court may award "actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. 2710(c)(2)(A).  When read in context, it is apparent that the

---

[4] Plaintiff does not even allege that he has a Facebook account, only that he is a Facebook user. (ECF No. 1-1 ¶ 35). Plaintiff likewise fails to allege that his Facebook profile (if he has one) actually contains personally identifying information. *See also Ghanaat v. Numerade Labs, Inc.*, No. 23-CV-00833, 2023 WL 5738391, at *4 (N.D. Cal. Aug. 28, 2023) ("plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses"); *Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023), *aff'd*, No. 23-7597-CV, 2025 WL 1256641 (2d Cir. May 1, 2025) (same).

language "but not less than liquidated damages in an amount of $2,500" is intended to limit the phrase "actual damages." *See Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022) ("According to the rule of the last antecedent, a 'limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows.'"). The plain language of the VPPA indicates that Congress only intended to compensate for actual damages. Because Plaintiff does not allege any actual damages, she has failed to state a claim.

In *Doe v. Chao*, 540 U.S. 614 (2004), the Supreme Court interpreted the Privacy Act of 1974, which has language similar to the VPPA that provides for "actual damages sustained by the individual…but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id.* at 619 (quoting 5 U.S.C. § 552a(g)(4)(A)). The Court held that actual damages are a prerequisite to recovering the statutory amount. *Id.* at 627. *See also Fanin v. U.S. Dep't of Veterans Affs.*, 572 F.3d 868, 872 (11th Cir. 2009) ("Obtaining monetary damages under § 552a(g)(4) requires proof of 'actual damages.'"). The Court's explained that its interpretation of the damages language turned on the presence of the phrase "actual damages" in the statute, *see Doe*, 540 U.S. at 623 n.8—the phrase that is also present in the VPPA's damages provision.

To read the VPPA as permitting an award of $2,500 in the absence of actual damages requires substituting the conjunction "or" in the place of the phrase "but not less than." *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1316 (11th Cir. 2022) ("The use of the disjunctive 'or' indicates alternatives and requires that those alternatives be treated separately.") (internal quotation marks omitted); *United States v. Palomares*, 52 F.4th 640 (5th Cir. 2022) ("'Or' is disjunctive.") (citing *Conjunctive/disjunctive canon*, Black's Law Dictionary (10th ed. 2014)). Such an interpretation is at odds with the plain language.

Here, Plaintiff has not alleged any actual damages that can open the door to the VPPA's

statutory minimum damages. The phrase "actual damages" is not defined in the VPPA, but other circuits have interpreted "actual damages" as permitting "recovery only for proven pecuniary losses and not for generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." *Fanin*, 572 F.3d at 872-73. The *Black's Law Dictionary* definition from the time the VPPA was enacted further supports this conclusion. *See United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023) (explaining that courts "look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted," which can be determined "by looking at dictionaries in existence around the time of enactment"). The applicable edition of *Black's Law Dictionary* defines "actual damages" as follows: "Real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages. Synonymous with 'compensatory damages' and with 'general damages.'" *Damages*, *Black's Law Dictionary* (5th ed. 1979). The Complaint alleges nothing more than mere sharing of Plaintiff's information, which is non-quantifiable, and thus, does not satisfy the "actual damages" requirement. (*see* ECF No. 1-1 ¶ 40); *see also Fanin*, 572 F.3d at 870, 875 (holding that plaintiffs who names, social security numbers, birth dates, and healthcare files were contained on a stolen hard drive could not recover statutory damages under the Privacy Act of 1974 because they failed to show any pecuniary loss). Thus, Plaintiff is not entitled to the statutory minimum damages, and his Complaint fails to state a claim upon which relief can be granted.

## V.     The VPPA Violates The First Amendment.

The Complaint should be dismissed because it seeks to enforce an unconstitutional statute. The First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. Laws like the VPPA that "burden" speech are unconstitutional unless they

satisfy First Amendment scrutiny. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1224 (10th Cir. 1999) (holding FCC regulation violated First Amendment where it restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship" because it made speech more difficult by limiting carriers' ability to target speech to particular audience). The VPPA imposes severe speech restrictions that cannot be justified.

### A.      The VPPA Imposes Suspect Burdens.

The VPPA triggers First Amendment scrutiny because it places speaker- and content-based restrictions on the dissemination of information. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *Sorrell*, 564 U.S. at 567. The First Amendment "[p]rohibit[s] restrictions [that] distinguish[] among different speakers." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010); *see also Reed*, 576 U.S. at 170.  Further, content-based restrictions "are presumptively unconstitutional. . . ." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

A burden is speaker-based if it applies only to some classes of speakers and content-based if its application turns on the message of regulated speech.  *Sorrell,* 564 U.S. at 567. Here, the VPPA applies only to a "video tape service provider" and prohibits only the disclosure of "personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Its dictates are speaker-based because they "target[s] those speakers" within their gateway definitions and no others, *Sorrell*, 564 U.S. at 565, and content-based because its applicability "depend[s] entirely on the communicative content of the" disclosures. *Reed*, 576 U.S. at 164. The Supreme Court in *Sorrell* held that a Vermont law restricting "the sale, disclosure, and use of prescriber-identifying information," which pharmacies receive when processing prescriptions, was both content- and speaker-based and triggered "heightened scrutiny." 564 U.S. at 571. The VPPA likewise forbids specified speakers from disclosing information that can be

identified only by its content. First Amendment scrutiny applies.

### B.    The VPPA Fails First Amendment Scrutiny.

First Amendment scrutiny is not satisfied for the VPPA. As an initial matter, strict scrutiny is the applicable standard. *See Reed*, 576 U.S. at 163, 171. The VPPA must therefore be "narrowly tailored to serve compelling state interests." *Id*. Although *Sorrell* declined to decide whether strict scrutiny or the intermediate standard under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980), applies to content- and speaker-based commercial speech, 564 U.S. at 571, the Court more recently applied strict scrutiny to a ban on robocalls, reasoning that, under its "precedents, a 'law that is content based' is 'subject to strict scrutiny.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 621 (2020) (quoting *Reed*, 576 U.S. at 165). Strict scrutiny is therefore the appropriate standard here. But the VPPA cannot even satisfy intermediate scrutiny, as the law is not "narrowly tailored to serve a significant governmental interest." *Knowles v. City of Waco, Tex.*, 462 F.3d 430, 433-34 (5th Cir. 2006) (quotation omitted). And a court "need not decide whether strict scrutiny applies," if a law does not survive constitutional scrutiny under either standard. *See Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1308 (11th Cir. 2017).

For example, under an intermediate scrutiny "commercial speech inquiry" it must be shown "at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Sorrell*, 564 U.S. at 572. This test is often expressed in four inquiries: (1) whether the speech at issue concerns "lawful activity" and is not "misleading," (2) whether the government interest in burdening speech is "substantial," (3) whether "the regulation directly advances the asserted government interest," and (4) whether the regulation is "more extensive than is necessary to serve that interest." *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017). The VPPA fails each inquiry.

- 12 -

First, it does not prevent misleading speech or address illegal businesses.

Second, no substantial interest supports the severe speech prohibitions. "[T]he government cannot satisfy the second prong of the *Central Hudson* test by merely asserting a broad interest in privacy," but must also "specify the particular notion of privacy and interest served" and demonstrate "that the state has considered the proper balancing of the benefits and harms of privacy." *U.S. West*, 182 F.3d at 1234-35. Congress's record for the VPPA specified the statute protects the notion of privacy defined by the First and Fourth Amendments. S. Rep. No. 100-599, at 4-5 (1988), *as re-printed in* 1988 U.S.C.C.A.N. 4342-4. But both Amendments constrain only state action. *See United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015); *Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 574 (N.D. Cal. 2019), *aff'd*, 24 F.4th 1287 (9th Cir. 2022); *Wooten v. La Salle Corr.*, No. 7:22-CV-000148 (WLS), 2024 WL 4132331, *6 (M.D. Ga. Sept. 10, 2024). So the VPPA, which burdens private businesses, does not "extend" their rights, S. Rep. No. 100-599 at 2. And the choice to prohibit private speech in the name of "intellectual freedom," *id.* at 4, makes little sense.

The legislative history also cites an incident "when a weekly newspaper in Washington published a profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store" and one other incident where "the attorney for a woman in a child custody proceeding made an informal request for the records of every film rented by her husband in an effort to show that, based on his viewing habits, he was an unfit father." *Id.* at 5-6. But simply reciting two incidents—out of innumerable video rentals nationwide—does not "show that the dissemination of the information desired to be kept private would inflict specific and significant harm on individuals." *U.S. West*, 182 F.3d at 1235. In neither incident did any harm arise. Judge Bork's Supreme Court nomination failed because of his judicial philosophy, not his video rentals,

- 13 -

and there is no evidence that the attorney in the custody proceeding obtained the film records.[5] Simply put, the legislative history cites not one incident of harm arising from disclosure of video rentals. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (explaining that the burden "is not satisfied by mere speculation or conjecture") (quotation marks omitted).

Third, even if a privacy interest were sufficient, the VPPA does not "directly advance[]" it. *Sorrell*, 564 U.S. at 572. "There must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *Id.* The VPPA is unconstitutionally underinclusive. *See Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 190 (1999). "While surprising at first glance, the notion that a regulation of speech may be impermissibly *underinclusive* is firmly grounded in basic First Amendment principles." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) (footnote omitted). Underinclusive laws present "risks of viewpoint and content discrimination," and "[t]hey may diminish the credibility of the government's rationale for restricting speech in the first place." *Id.* at 52.

The VPPA protects privacy in the most selective and irrational of ways. It protects only "video" purchases, rentals, or deliveries, 18 U.S.C. § 2710(a)(3), but not books, magazines, music, and pictures. "The failure to prohibit the disclosure of" purchases of such materials "makes no rational sense if the Government's true aim is to" protect intellectual privacy or guard against embarrassment from public disclosure of information people consume at home. *Rubin*, 514 U.S. at 488. Under the statute, renting *Lassie* activates fulsome statutory penalties if that rental is disclosed, but books, magazines, and photographs with sexual content (or any content) receive no protection. Likewise, because the statute protects only "prerecorded" materials, 18 U.S.C.

---

[5] Given substantial amounts of private information are exchanged daily in litigation discovery, it is hard to see what a litigation incident could say about an important privacy interest.

- 14 -

§ 2710(a)(4), someone who watches livestreamed video content (no matter how embarrassing) receives none of the rights provided to those who watch prerecorded content (no matter how innocuous). The *same* video content will be unprotected on a first, live showing but may be protected on later showings. The VPPA is also selective in its application to some businesses, but not others. The statute applies to a video obtained from a business having "a focus" of video rental (*e.g.*, Netflix) but not to the *same video* from a business without that focus (*e.g.*, Target). *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017). And it selectively reaches renters, purchasers, and subscribers, but no one else. *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023). This burdens some speakers, but not others, for no reason whatsoever.

Finally, Congress could have passed a privacy law that protects privacy in a rational manner without this selectivity, *see Gale Force Roofing & Restoration, LLC v. Brown*, 548 F. Supp. 3d 1143, 1160 (N.D. Fla. 2021), such as by applying directives to all content for which an intellectual-privacy interest might reasonably attach, and all suppliers of that content. Instead, Congress picked the case of a single judicial nominee, drew up a law to prevent *that* case from reoccurring, and protected practically nothing else. This is so irrational the VPPA will not even do that: if all internet images a future judicial nominee ever viewed are made public, the statute invoked here will say nothing—even though that would be no different from the Bork incident that inspired the VPPA. That is no way to protect privacy, and it does not justify severe speech burdens.

## CONCLUSION

Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of standing or alternatively pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Dated: May 23, 2025

Respectfully submitted,

By:   */s/ Colby M. Everett*
Colby M. Everett #72403 (MO)
**Baker & Hostetler LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Tel: (303) 861-0600
Fax: (303) 861-7805
ceverett@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606
Tel: (312) 416-6200
Fax: (312) 416-6201
bdelgobbo@bakerlaw.com

*Attorneys for Defendant CoStar Realty
Information, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, May 23, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record. I further certify that a true and correct copy of the foregoing document was served via certified mail on the following:

Pamela Bondi
Attorney General for the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

*/s/ Colby M. Everett*
Colby M. Everett