# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DESMOND BANKS, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| COSTAR REALTY INFORMATION, INC., a Delaware corporation, | ) ) ) ) |
| *Defendant.* | ) |

Case No. 4:25-cv-00564

Hon. Judge Sarah E. Pitlyk

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COSTAR REALTY INFORMATION, INC.'S MOTION TO DISMISS

I.      **INTRODUCTION & BACKGROUND**

The Video Privacy Protection Act (the "VPPA"), 18 U.S.C. § 2710 *et seq.* was passed by Congress to protect consumers' privacy about the video materials that they rent or buy to watch. Although the VPPA was passed in 1988, with the rise of online, mobile device, and website video services, it is more relevant than ever as it serves to protect consumers from having their video watch history disclosed to advertisers and monetized.

Defendant CoStar Realty Information, Inc. ("Defendant" or "CoStar") is the owner and operator of apartments.com (the "Website"), one of the largest online real estate platforms in the nation. ("Compl.," Dkt. 1-1, ¶ 15.) A key aspect of Defendant's business model depends on attracting renters by showcasing properties on its Website. (*Id.* at ¶¶ 2, 18.) One method Defendant chooses to do this is by allowing rental listings to include video virtual tours of their properties. (*Id.*) Defendant advertises this capability by stating "with a virtual tour, renters can explore your community and available units without setting foot on the property."[1] (*Id.*) Defendant even encourages adding virtual tours to listings stating that it offers an opportunity to "[s]tand out from the competition."[2] (*Id.*) Critically, Defendant's Website utilizes sophisticated tracking technology, including the Meta Pixel, that collects its Subscribers' personally identifiable information ("PII"), including information which identifies a person as having viewed specific videos on Defendant's Website. (*Id.* at ¶¶ 3, 21.) The Meta Pixel is a piece of code that online media providers, like Defendant, can integrate into their websites. (*Id.* at ¶ 22.) Once activated, the Meta Pixel tracks the people and the type of actions they take on the website and disseminates that information to Facebook. (*Id.*) Therefore, when one of Defendant's Subscribers requests to watch a video on

---

[1] https://www.apartments.com/grow/learning-center/virtual-tours?msockid=17e3eb02e46e6f5b2986f96ee5bd6ea2
[2] https://www.apartments.com/grow/learning-center/virtual-touring-importance

1

Defendant's Website, the Meta Pixel sends that video request, along with the Subscribers' identity, to Facebook. (Compl., ¶ 22.) Defendant knowingly utilizes such tracking technology and discloses this information to third party advertisers so that they can target specific users with tailored advertisements based on their viewing history. (*Id*. at ¶¶ 3, 5, 26, 33.) However, Subscribers are never specifically asked to consent to Defendant sharing and disclosing their PII to third parties as required by the VPPA. (*Id*. at ¶ 31.)

Plaintiff Desmond Banks ("Plaintiff") was one such Subscriber who created an account and subscribed to Defendant's Website in order to view the apartments that Defendant showcases, including viewing video tours for such apartments. (*Id*. at ¶¶ 34, 36.) However, as alleged in his Complaint, and unbeknownst to Plaintiff, when he viewed Defendant's video tours on its Website, Defendant knowingly and intentionally disclosed his PII, including his video viewing history, to third parties without his written consent. (*Id*. at ¶¶ 37, 38.) As such, Defendant has violated Plaintiff's and other class members' privacy rights under the VPPA and Defendant's arguments that Plaintiff has failed to plausibly allege violations of the VPPA lack merit. For these reasons, and those stated in further detail below, Defendant's Motion to Dismiss ("Motion," Dkt. 14) should be denied.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept as

true all plausible factual allegations and draw all reasonable inferences in favor of the non-moving party. *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014).

### III.     ARGUMENT

#### A.     Defendant is a Video Tape Service Provider Under the VPPA.

The VPPA provides that a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." 18 U.S.C. § 2710 (a)(4). Defendant does not dispute that its prerecorded video tours are audio-visual materials. Rather, Defendant argues that it does not qualify as a "video tape service provider" because it is not "engaged in the business" of delivering such audio-visual materials. (Motion at 2–4.) Defendant is wrong.

Plaintiff explicitly alleges that a key aspect of Defendant's business model "depends on attracting renters by showcasing properties on its Website." (Compl., ¶ 17.) Defendant chooses to do this by "allowing its rental listers to offer video virtual tours" and even encourages listers to do so by stating that it "offers an opportunity to stand out from the competition." (*Id.*) Defendant's platform even allows prospective renters to sort apartments by viewing those which contain a video tour of the unit and property. (*Id.*) In other words, Defendant makes money by attracting consumers to list and rent properties on its platform using "audio-visual materials" which showcase properties to rent and give prospective renters the opportunity to "explore . . . available units without setting foot on the property." (*Id.*)

Although Defendant brushes off Plaintiff's allegations while describing its business model as merely a platform to connect "housing seekers with property owners," Defendant ignores its primary method in doing so, *i.e.* by providing video tours to its consumers. (Motion at 3.) In fact, the Southern District of California considered this same argument in a nearly identical case in

3

*Mata v. Zillow Group, Inc.*, No. 24-cv-01095, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024). In *Mata* the plaintiff alleged that the defendant "operates [a] real estate marketplace through its website, Zillow.com, and mobile application" and that listings on Defendant's website include video tour walkthroughs. *Mata*, 2024 WL 5161955 at *1, 3. In determining that Defendant's "'conveyance of video content' is 'significantly tailored' to its business purpose of facilitating real estate transactions[,]" the court explained that:

> in serving as a marketplace, "a key element of Defendant's business model is to showcase for-sale residential properties and properties available for lease on its website using ... video content." . . . In other words, Defendant's audiovisual technology is what attracts real estate agents and sellers to list their properties on Zillow.com in the first place. The video walkthrough tours make Defendant's website a better alternative to other platforms since it "boosts the views" on listings and thereby helps sellers "find an interested buyer more quickly". . . . Defendant's business would fail if agents and sellers did not elect to list their properties with Defendant. Thus, attracting listings by offering the use of video walkthrough tours is essential to Defendant's business model.

*Id.* at *3. Based on these facts the court concluded that the plaintiff had alleged that the defendant is a "video tape service provider" as defined by the VPPA. *Id.*

Here, as in *Mata*, Plaintiff plainly alleges that Defendant's business is to showcase for rent properties on its Website by using audiovisual virtual video tours. (Compl., ¶ 17.) Thus, the delivery of video walkthrough tours is essential to Defendant's business model. *See Mata*, 2024 WL 5161955 at *3. Defendant is thus no different than the defendant in *Mata* and other defendants where courts have found them subject to VPPA liability despite them having non-video aspects to their business model. *See, e.g.*, *Salazar v. Nat'l Basketball Ass'n,* 118 F.4th 533, 548 (2d Cir. 2024) ("Congress cast a wide net in defining 'video tape service provider,' to ensure that businesses dealing in audiovisual goods or services satisfy the definition even if they also deal in nonaudiovisual goods or services"); *Collins v. Toledo Blade,* 720 F. Supp. 3d 543, 554 (N.D. Ohio 2024) (denying motion to dismiss where "Defendants are in the business of delivering news and

4

journalism to the public, and that they format this content in both the written word and video"); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 156 (S.D.N.Y. 2023) (rejecting arguments that because the website provided written content in addition to prerecorded audiovisual materials the VPPA did not apply); *Belozerov v. Gannett Co.,* 646 F. Supp. 3d 310, 314 (D. Mass. 2022) ("the VPPA is *not* limited to entities that are *primarily* engaged in the business of providing video content" (emphasis added)); *Lee v. Springer Nature America, Inc.*, No. 24-cv-4493, 2025 WL 692152, at *8 (S.D.N.Y. Mar. 4, 2025) (rejecting argument that the defendant's "primary business . . . as a 'a publisher of print magazines and articles focused on developments in scientific fields' with minimal videos hosted on its website do not turn it into a video tape service provider" (internal citation omitted)); *Ambrose v. Bos. Globe Media Partners LLC*, No. 21-cv-10810, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (applying VPPA to *The Boston Globe*); *Lebakken v. WebMD, LLC* 640 F.Supp.3d 1335, 1340 n.2 (N.D. Ga Nov. 4, 2022) (finding that WebMD is a video tape service provider because it delivered prerecorded audio-visual materials to consumers via its e-newsletter and its website).

Conversely, Defendant's cited authorities are readily distinguishable because in each case the audiovisual contents provided had a trivial relation to each of the defendants' businesses. *See Carroll, et al., v. General Mills, Inc.*, No. 23-cv-1746, 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023) (rejecting claim against food manufacturing company that "provide[d] videos [on its websites] as a peripheral part of its marketing strategy"); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, at *8 (S.D. Cal. Jul. 10, 2023) (rejecting claim against fashion brand that was based on a bare allegation that the brand "monetize[ed] instances in which consumers watch[ed] videos" on its website); *Rodriguez v. Delta T LLC*, No. 23-cv-03717, 2023 WL 9419152,*4 (C.D. Cal. Dec. 12, 2023) (rejecting claim where videos merely provided

5

information on "how to install and calibrate [defendant's] ceiling fans[]"); *Cantu v. Sunrun Inc.*, No. 23-cv-974, 2023 WL 11795670, *3 (S.D. Cal. Nov. 22, 2023) (rejecting claim where videos were merely "marketing efforts . . . directed towards its sale of solar energy products").

Because Plaintiff sufficiently alleges that Defendant is a video tape service provider, Plaintiff's claims should not be dismissed on these grounds.[3]

### B. Plaintiff is a Consumer Under the VPPA.

Defendant also argues that Plaintiff is not a "consumer" under the VPPA because 1) as a free account holder he is not a "subscriber" and 2), largely recycling the argument that Defendant is a not a video tape service provider, that Plaintiff did not subscribe to Defendant's website for the exclusive purpose of getting audio-visual materials. (Motion at 5.) However, both of Defendant's arguments have been rejected by the majority of courts which have not interpreted the statute so narrowly.

For example, the Second Circuit's decision in *Salazar* rejected Defendant's argument that Plaintiff's subscription must be tied to video materials. As explained by the *Lee* court, "the [*Salazar*] court held that the term "'any' has expansive meaning." *Salazar*, 118 F.4th at 546 (quoting *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 219, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008)). The term "goods or services" in the definition of "consumer" is not limited to audiovisual services but applies to a "good or service generally." *Salazar*, 118 F.4th at 546. In addition, addressing Defendant's other argument, *Salazar* also held that a person alleges he is a "subscriber" by pleading that he provided consideration in the form of personal information in exchange for the

---

[3] Ultimately, Plaintiff's allegation that Defendant's business model is tailored to delivery of video content raises factual questions that ought not be decided at the motion to dismiss stage. *Mata*, 2024 WL 5161955 at *3 (citing *Sellers v. Bleacher Rep., Inc.,* No. 23-cv-00368, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023)).

good or service. *Salazar*, 118 F.4th at 552. "Thus, under *Salazar*, a plaintiff need not plead that they paid separate consideration for access to the audio visual material. It is sufficient that Plaintiff subscribed to the Website, which is a good or service provided by Defendant, and that Defendant is a video tape service provider." *Lee*, 2025 WL 692152, at *9.

The Seventh Circuit reached the same conclusion in *Gardner*. In analyzing the definition of "consumer," the court explained that the VPPA "does not say 'subscriber of . . . video services'; it says 'subscriber of … services *from a video tape service provider*." *Gardner v. Me-TV National Limited Partnership*, 132 F.4th 1022, 1025 (7th Cir. 2025) (emphasis in original); *see also Id.* ("Any purchase or subscription from a 'video tape service provider' satisfies the definition of 'consumer', even if the thing purchased is clothing or the thing subscribed to is a newsletter").[4] Further, virtually every court of appeals has concluded that to be considered a "subscriber" merely means that a person "gives value in exchange for goods or services." *Id.* at 1024 ("If paying $1 a year to use MeTV would produce a subscription, then providing $1 worth of information must do so too"); *see also Salazar*, 118 F.4th at 550–53; *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 487–89 (1st Cir. 2016); *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1255–57 (11th Cir. 2015); Cf. *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341–44 (11th Cir. 2017).

Here, Plaintiff plainly alleges that he subscribed to Defendant's Website and as a result of that subscription, and his viewing of its prerecorded videos, Defendant obtained, among other things, valuable information, including but not limited to his and other Subscribers' real first and

---

[4] "What more is required? If plaintiffs had signed up and never watched a video, but had purchased a Flintstones sweatshirt or a Scooby Doo coffee mug or a Superman action figure or a Bugs Bunny puzzle (MeTV's web site offers all four), then they would have purchased "goods" from a "video tape service provider". Nothing in the [VPPA] says that the goods or services must be video tapes or streams." *Gardner*, 132 F.4th at 1025.

7

last names, email address, phone number, gender, date of birth, age, language preference, browsing information, cursor movements, scrolling activity, IP address, and geolocation information. (Compl., ¶¶ 16, 25.) Plaintiff also alleges that by nature of his status as a Subscriber, he provided Defendant cookie information associated with his device which helps Defendant collect personal information and target content to its Subscribers. (Compl., ¶ 28.) Such allegations that Plaintiff provided Defendant "valuable personal information in exchange" to become a Subscriber is "sufficient at the pleadings stage to satisfy the requirement that [he] became a 'subscriber of'" Defendant's Website. *Salazar*, 118 F.4th 552-53; *Yershov*, 820 F.3d at 489 (reasoning that the plaintiff provided "consideration in the form of" "personal information" including his Android ID and device's GPS location); *Gardner*, 132 F.4th at 1025 (holding that "when a person does furnish valuable data in exchange for benefits, that person becomes a 'consumer' as long as the entity on the other side of the transaction is a 'video tape service provider'"); *Mata*, 2024 WL 5161955 at *4 (concluding that plaintiff adequately pled that he is a "subscriber" of the defendant's Zillow.com website because he shared valuable personal information such as his email address and Facebook ID"). Therefore, because the overwhelming majority of courts follow *Salazar's* broad view of the definition of "consumer," Plaintiff's allegations are sufficient to establish that he is a "subscriber" under the VPPA.

       **C.**    **Plaintiff's Allegations are more than Sufficient to Allege that Defendant Knowingly Disclosed its Subscribers' PII.**

Defendant argues that Plaintiff fails to allege it "knowingly" disclosed Plaintiff's PII. (Motion at 8.) To begin with, Defendant's argument is simply incorrect as Plaintiff alleges several times throughout his Complaint that Defendant knowingly installed its tracking technology and knowingly transmitted VPPA incriminating PII. (Compl., ¶¶ 21–23, 37.) Plaintiff even alleges that Defendant admits to such disclosures in its privacy policy. (*Id.* at ¶¶ 25–30.) Thus, Plaintiff

8

establishes Defendant's knowledge of such disclosures and courts within this circuit do not recognize this argument as grounds for dismissal. *Feldman v. Star Tribune Media Company LLC*, 659 F.Supp.3d 1006, 1022 (D. Minn. Mar. 7, 2023) ("plaintiff need not allege—to meet the VPPA's 'knowingly' element—that the video tape service provider knew that the person to whom personally identifiable information was disclosed would 'actually connect' the disclosed information"); *see also Sellers*, 2023 WL 4850180 at *5 ("The complaint alleges that Bleacher Report deliberately installed the Facebook pixel on its website. It further alleges that Bleacher Report did this in order to improve its targeted advertising and increase its revenue. These factual allegations are enough for the court to reasonably infer that defendant knowingly discloses personally identifying information." (internal citations omitted)); *Adams v. Am.'s Test Kitchen*, 680 F. Supp. 3d 31, 43 (D. Mass. 2023) (holding that knowledge was adequately alleged where the defendants "'chose to install' [the] Pixel").

Defendant also challenges Plaintiff's VPPA claim because he supposedly fails to sufficiently allege that it disclosed PII collected from its Subscribers. (Motion at 6–8.) However, Defendant's arguments ignore the numerous *factual* allegations that have been overwhelmingly recognized by courts across the county as sufficient to survive at the motion to dismiss stage. Specifically, Plaintiff alleges that Defendant discloses its Subscribers' and Plaintiffs' PII by utilizing tracking pixels including the Meta Pixel; that when Plaintiff requests to watch a video tour on Defendant's Website that the Meta Pixel sends that video tour request along with the identity of Plaintiff to Facebook; and Plaintiff included a screen shot of the data transmitted to Facebook that included the title of the video tour that was transmitted. (Compl., ¶¶ 21–24). Further, Plaintiff provided evidence from Defendant's *own* privacy policy that states that Defendant collects and discloses information that identifies a specific person as having viewed a specific

9

video. (Compl., ¶¶ 25–30.) These allegations have been held to be more than sufficient at the motion to dismiss stage. *Lamb v. Forbes Media LLC*, No. 22-cv-06319-ALC, 2023 WL 6318033, at *10 (S.D.N.Y. Sept. 28, 2023) ("Courts have uniformly held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name"); *Campos v. Tubi, Inc.,* 716 F. Supp. 3d 623, 639 (N.D. Ill.2024) ("And although the Privacy Policy does not explicitly say that it shares the relevant VPPA-PII ***combination*** with third parties, it does state that it discloses both categories of information") (emphasis in original); *Burdette v. FuboTV Inc.*, No. 23 C 10351, 2024 WL 2831466, at *3 (N.D. Ill. Jun. 4, 2024) ("Fubo's Privacy Policy states that Fubo affirmatively collects . . . : 'Identifiers (such as name, address, email address) . . . location information . . .' Information such as name, address and demographic information would presumably permit an ordinary person to identify a subscriber. If this identifying information was then disclosed with that individual's viewing history, as [p]laintiff alleges, such a disclosure would satisfy the ordinary person standard"). Given the stage of the proceedings, the fact that courts routinely hold that such allegations are sufficient, and that Defendant's argument ultimately presents a factual dispute, Defendant's argument should be rejected. *Edwards v. MUBI, Inc*., 24-cv-00638-EKL, 2025 WL 985130, at *4 (N.D. Cal. Mar. 31, 2025) ("[t]he Court does not resolve factual disputes on a motion to dismiss"); *see also Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023) ("Whether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss.") (citing *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336 (N.D. Ga. 2023)); *Campos*, 716 F. Supp. 3d at 637 (a VPPA plaintiff "does not need to plead the circumstances of every alleged disclosure with particularity. This is especially so given the

10

informational asymmetry at play; [the defendant] would not, of course, have made [the plaintiff] privy to any potential disclosures").

While Defendant leans on *Solomon* to support its argument on this issue, *Solomon* is an out of circuit decision which became the first appellate court to hold that a plaintiff failed to allege that the defendant disclosed PII in violation of the VPPA where the Meta Pixel disclosed the plaintiff's identity and video titles. *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54–55 (2nd Cir. 2025). Defendant's lack of any other authority to support this narrative is telling. In fact, the most recent district court decision in the wake of *Solomon* heavily scrutinized the Second Circuit's decision and its interpretation of the "ordinary person" standard, notably stating that it "creates a substantial loophole in the VPPA's coverage and allows easy evasion[.]" *Manza v. Pesi, Inc.*, No. 24-cv-690, 2025 WL 1445762, at *8 (W.D. Wis. May 20, 2025) ("under [defendant's] view, a video tape service provider is free to disclose a customer's video purchases to social media companies, data brokers, or anyone else, even when the provider knows that the third party will be able to easily identify the customer, so long as the provider uses a 'code' that an 'ordinary person' could not decipher. It essentially allows a video tape service provider to 'skirt liability under the VPPA . . . by disclosing a unique identifier and a correlated look-up table'") (internal citation omitted). Applying the logic furthered by Defendant's argument that the transmissions to Facebook via the Meta Pixel are not PII to the "Judge Bork case would mean that the video store would be free to disclose Judge Bork's rental history so long as the store matched that history with an ID number provided by the reporter instead of with the judge's name." *Id*. (this "creates a loophole that significantly undermines the basic purpose of the VPPA and is not supported by the VPPA's text").

Rather, courts within *this circuit* have recognized that the overwhelming majority of district courts that have addressed the use of the Meta Pixel have concluded that the information disclosed connects the consumer's identity to the video materials the consumer requested or obtained. *See Feldman*, 659 F.Supp.3d at 1021 (collecting cases and citing *Belozerov,* 646 F. Supp. 3d at 313–15; *Czarnionka v. The Epoch Times Ass'n, Inc.*, No. 22-cv-6348, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022); *Lebakken*, 640 F. Supp. 3d at 1341–42; *Stark v. Patreon, Inc.*, No. 22-cv-03131-JCS, 635 F. Supp. 3d 841, 852–54 (N.D. Cal. Oct. 13, 2022); *Ambrose*, 2022 WL 4329373 at *2; *contra Martin v. Meredith Corp.*, No. 22-cv-4776 (DLC), 657 F. Supp. 3d 277, 283–86 (S.D.N.Y. Feb. 17, 2023)); *see also Mata,* 2024 WL 5161955 at *4 (denying defendant's motion to dismiss with analogous facts to this case). The Court should follow the overwhelming majority of cases that have reviewed the issue and deem his allegations sufficient.

### D.     Plaintiff is not Required to Plead Actual Damages.

The VPPA permits "[a]ny person aggrieved" by a violation of this statute to recover "actual damages but not less than liquidated damages in an amount of $2,500," punitive damages, attorneys' fees and costs, and other equitable relief. 18 U.S.C. § 2710(c). Defendant argues that this language requires Plaintiff to plead an *actual* pecuniary loss. Not so.

Defendant's argument fails because the VPPA does not condition Plaintiff's recovery on the proof of actual damages. In fact, within the context of the VPPA, the District of Massachusetts heard an identical argument and concluded that the plaintiff did not need to allege any specific pecuniary loss. *Saunders v. Hearst Television, Inc.*, 711 F.Supp.3d 24, 32 (D. Mass. 2024). In *Saunders*, the court analyzed *Doe v. Chao* which Defendant relies on heavily in making its argument. (Motion at 8–10.) There, the plaintiff argued that the Privacy Act of 1974, 5 U.S.C. § 552a, did not require proof of actual damages. *Id*. The Privacy Act provides that if the United

12

States violates a provision of the statute, it "shall be liable to the individual in an amount equal to the sum of actual damages sustained by the individual as a result of the [violation], but in no case shall a person entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4). The court concluded that in *Doe* the plaintiff needed to prove actual damages to prevail on a Privacy Act claim but in its conclusion noted that if "Congress wished to allow recovery of liquidated damages for violations of the Privacy Act absent actual damages, it could have made the statute read 'the Government would be liable to the individual for actual damages 'but in no case ... less than the sum of $1,000.' " *Saunders*, 711 F.Supp.3d at 32 (citing *Doe v. Chao*, 540 U.S. 614, 623 (2004)). "That is *nearly exactly how the VPPA is styled*" and thus should be interpreted to allow the recovery of liquidated damages absent actual damages. *Id*. (emphasis added); *See* 18. U.S.C. § 2710 (c)(2)(A) ("The court may award actual damages *but not less than liquidated damages in an amount of $2,500*") (emphasis added). Because the language of the Privacy Act is materially different than that of the VPPA, and because Defendant fails to cite a case that interprets the VPPA, this Court should follow the same reasoning as *Saunders* and reject Defendant's argument that Plaintiff need to allege any specific pecuniary loss.

  E.  **The VPPA Does Not Violate the First Amendment.**

Defendant contends that VPPA runs afoul of the First Amendment by imposing severe speech restrictions. (Motion at 10–15.) Defendant's argument lacks merit and such argument has never been recognized within the context of the VPPA.

Defendant contends that strict scrutiny is the applicable standard. (*Id*. at 12.) However, intermediate scrutiny is appropriate because Defendant's speech is commercial and only concerns a private matter. Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,

13

447 U.S. 557, 661 (1980). Such allegations are consistent with Plaintiff's Complaint, where he alleges that Defendant discloses PII to third party advertisers so that they can target specific users with tailored advertisements based on their viewing history. (Compl., ¶ 3.) Because these activities relate solely to Defendant's economic interest, "[Defendant]'s disclosure of PII to third parties is commercial speech." *See Saunders*, 711 F.Supp.3d at 33 (applying intermediate scrutiny in a VPPA case with analogous facts); *see also Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427, 445 (S.D.N.Y. 2016) (applying intermediate scrutiny in a case involving a state analog to the VPPA and a nearly identical set of facts). If the commercial speech concerns lawful activity and is not misleading, it may be regulated if the government: (1) "assert[s] a substantial interest in support of its regulation"; (2) "demonstrate[s] that the restriction on commercial speech directly and materially advances that interest"; and (3) the regulation is "narrowly drawn." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 624 (1995), quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564–565 (1980). "At bottom, the VPPA must evince a 'fit between the legislature's ends and the means chosen to accomplish those ends' that is 'not necessarily perfect, but reasonable.'" *Saunders*, 711 F.Supp.3d at 33 (citing *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 481 (1989), quoting *Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 341 (1986)).

First, and as explained in *Saunders*, "Congress's interest in enacting the VPPA was to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Saunders*, 711 F.Supp.3d at 33 ("[t]he Supreme Court has repeatedly recognized the sanctity of personal privacy") (citing examples); S. Rep. 100-599 at 1. Second, restricting Defendant from disclosing to third parties the exact video tours that Plaintiff viewed alongside his PII "directly and materially advances that interest." *Id*. Third, Defendant articulates

14

"no legitimate non-commercial First Amendment interest" that its "exploitation of [P]laintiff's PII serves." *Saunders*, 711 F.Supp.3d at 33. Furthermore, while Defendant argues that the VPPA protects privacy in a selective and irrational manner because it protects videos "but not books, magazines, music, and pictures" (Motion at 14), the statute "is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers." *Saunders*, 711 F.Supp.3d at 33; *see* 18 U.S.C § 2710 *et seq*. On this point, Defendant cites *Barr v. Am. Ass'n of Pol. Consultants, Inc.* to support its argument that the VPPA is unconstitutional. 591 U.S. 610 (2020); (Motion at 12.) However, this case runs counter to Defendant's assertion. In *Barr*, the court examined whether the Telephone Consumer Protection Act of 1991 ("TCPA"), a statute that protects consumer privacy by specifically providing a restriction on robocalls, as a whole was unconstitutional. *Id*. at 622-23; *see* 47 U.S.C. § 227(b). The TCPA however provides no prohibitions on other forms of communications. While it was not directly addressed by the court, the TCPA was held constitutional despite it being a statute that exclusively protects consumers from robocalls. *Id*. at 623. Considering this result and the nature of the TCPA, Defendant's argument that the VPPA must be held unconstitutional because it only protects video purchases, rentals, or deliveries but not "books, magazines, music, and pictures" lacks merit. (Motion at 14.) Lastly, Plaintiff is not aware of any case, and Defendant cites none, holding that the VPPA violates the First Amendment. Accordingly, this Court should similarly hold as in *Saunders* that the VPPA does not violate the First Amendment as the "fit between Congress's goal of protecting privacy in this realm and its means to do so is at least reasonable." *Saunders*, 711 F.Supp.3d at 33; *See also Bd. of Trs. of State Univ. of New York*, 492 U.S. at 481.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

15

| | |
|---|---|
| DATED: June 13, 2025 | Respectfully submitted,<br><br>DESMOND BANKS, individually and on behalf of similarly situated individuals<br><br>By: /s/ *Jordan R. Frysinger*<br>One of Plaintiff's Attorneys |

Lanny Darr (#42038)
Darr Law Offices, Ltd.
307 Henry Street, Suite 406
Alton, IL 62002
Tel: (618) 208-6828
darr@darrfirm.com

Eugene Y. Turin
Jordan R. Frysinger
McGuire Law, P.C.
Firm ID: 56618
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

    I, Jordan R. Frysinger, hereby certify that I caused a copy of the foregoing to be served on all counsel of record, by operation of the Court's CM/ECF system, on June 13, 2025.

*/s/ Jordan R. Frysinger*
*Attorney for Plaintiff*
