**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

DESMOND BANKS, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

v.

COSTAR REALTY INFORMATION, INC.,

Defendant.

Case No. 4:25-cv-00564

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

I. Plaintiff Does Not Allege CoStar Is A "Video Tape Service Provider." ..........................1

II. Plaintiff Does Not Allege He Is A "Consumer." ........................................................2

III. Plaintiff Does Not Allege That CoStar Knowingly Disclosed PII. ...............................5

A. Plaintiff Fails To Allege Any Information Constitutes PII. ...............................5

B. CoStar Did Not Knowingly Disclose PII. ..........................................................7

IV. Plaintiff Fails to Allege Actual Damages. ..................................................................7

V. The VPPA Violates The First Amendment. ................................................................8

CONCLUSION ........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Cahill*,
598 F.3d 79 (2d Cir. 2010)....................10

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)....................8, 9

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016)....................10

*Brown v. Learfield Commc'ns, LLC*,
713 F. Supp. 3d 355 (W.D. Tex. 2024)....................4

*Brown v. Learfield Commc'ns, LLC*,
No. 1:23-CV-00374-DAE, 2024 WL 3676709 (W.D. Tex. June 27, 2024)....................4

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023)....................2

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994)....................10

*Dahlstrom v. Sun-Times Media, LLC*,
777 F.3d 937 (7th Cir. 2015)....................9

*Dittmer Props., L.P. v. FDIC*,
708 F.3d 1011 (8th Cir. 2013)....................6

*Dobles v. Black Hills Corp.*,
696 F. Supp. 3d 750 (D.S.D. 2023)....................5

*Doe v. Chao*,
540 U.S. 614 (2004)....................8

*Edenfield v. Fane*,
507 U.S. 761 (1993)....................10

*Edwards v. Learfield Commc'ns, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023)....................4

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....................6, 7

*El Dia, Inc. v. Puerto Rico Dep't of Consumer Affs.*,
413 F.3d 110 (1st Cir. 2005)....................10

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015)....................3

*Fanin v. U.S. Dep't of Veterans Affairs*,
572 F.3d 868 (11th Cir. 2009)....................8

*Florida Bar v. Went For It, Inc.*,
515 U.S. 618 (1995)....................9, 10

*Gardner v. Me-TV Nat'l Ltd. P'ship*,
132 F.4th 1022 (7th Cir. 2025)....................3

*Heather v. Healthline Media, Inc.*,
No. 3:22-cv-05059-JD, 2023 WL 8788760 (N.D. Cal. Dec. 19, 2023)....................4

*Hernandez v. Container Store, Inc.*,
No. No. 2:23-cv-05067-HDV-RAO, 2024 WL 72657 (C.D. Cal. Jan. 3, 2024)....................2

*Hughes v. Nat'l Football League*,
No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025)....................6

*Hunthausen v. Spine Media, LLC*,
678 F. Supp. 3d 1228 (S.D. Cal. 2023)....................4

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023)....................4

*Kuzenski v. Uproxx LLC*,
No. 2:23-CV-00945-WLH-AGR, 2023 WL 8251590 (C.D. Cal. Nov. 27, 2023)....................4

*Manza v. Pesi, Inc.*,
No. 24-cv-690-JDP, 2025 WL 1445762 (W.D. Wis. May 20, 2025)....................7

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023)....................4

*Mata v. Zillow Grp., Inc.*,
No. 24-CV-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)....................2

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015)....................7

*New Georgia Project v. Raffensperger*,
976 F.3d 1278 (11th Cir. 2020)....................10

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021)....................1

*Pac. Frontier v. Pleasant Grove City*,
414 F.3d 1221 (10th Cir. 2005)....................10

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017)....................3

*Peterson v. Learfield Commc'ns, LLC*,
705 F. Supp. 3d 937 (D. Neb. 2023)....................4

*Pileggi v. Washington Newspaper Publ'g Co., LLC*,
No. CV-23-345 (BAH), 2024 WL 324121 (D.D.C. Jan. 29, 2024)....................4

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015)....................8, 9

*Rodriguez v. JP Boden Servs. Inc.*,
No. 23-CV-00534-L-VET, 2024 WL 559228 (S.D. Cal. Feb. 12, 2024)....................4

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004)....................1

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024)....................3

*Salazar v. Paramount Glob.*,
133 F.4th 642 (6th Cir. 2025)....................3

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024)....................10

*Skilling v. United States*,
561 U.S. 358 (2010)....................1

*Slack Techs., LLC v. Pirani*,
598 U.S. 759 (2023)....................1

*Solomon v. Flipps Media*,
136 F.4th 41 (2d Cir. 2025)....................6

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023)....................4

*UMB Bank, N.A. v. MacMillin Co., LLC*,
654 B.R. 824 (D.N.H. 2023)....................10

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................2

*Wollschlaeger v. Governor, Fla.*,
848 F.3d 1293 (11th Cir. 2017) ....................8

**Statutes**

18 U.S.C. § 2710(a)(1)....................11

18 U.S.C. § 2710(a)(3)....................7

18 U.S.C. § 2710(a)(4)....................1, 11

18 U.S.C. § 2710(b)(2)(B) ....................11

18 U.S.C. § 2710(c)(2)(A) ....................8

18 U.S.C. § 2710 *et seq*....................1

Mich. Comp. Laws. 445.1711(a) ....................11

Mich. Comp. Laws 445.1712(1) ....................11

Mich. Comp. Laws 445.1713(a) ....................11

**Rules**

Fed. R. Civ. P. 12(b)(6)....................12

**Other Authorities**

https://www.apartments.com/grow/about/privacy-notice) ....................5

Webster's Ninth New Collegiate Dictionary 1294 (1987) ....................1

## INTRODUCTION

Plaintiffs' opposition fails to overcome legal deficiencies detailed in CoStar Realty Information, Inc.'s ("CoStar") Motion to Dismiss. Plaintiff's allegations do not establish a violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710, *et seq*. Further, the statute itself is an unconstitutional restraint on speech in violation of the First Amendment. Accordingly, the Complaint should be dismissed with prejudice.

### I. Plaintiff Does Not Allege CoStar Is A "Video Tape Service Provider."

Plaintiff's opposition presents a litany of flawed arguments regarding why CoStar should qualify as a video tape service provider ("VTSP") under the VPPA. None of these arguments hold water. If any authorities can be read to support Plaintiff's argument that companies which provide rental listings containing video tours are covered by the VPPA but those that provide only photos are not, these authorities are inconsistent with the statutory language limiting VTSPs to entities "engaged in *the* business" of delivering video content. *See* 18 U.S.C. § 2710(a)(4) (emphasis added). The term "the" is the English language's definite article, "used as a function word to indicate that a following noun or noun equivalent is definite." Webster's Ninth New Collegiate Dictionary 1294 (1987). This definite-article usage in legislation is routinely understood "to speak of" the noun at issue "as a discrete thing." *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also Slack Techs., LLC v. Pirani*, 598 U.S. 759, 767 (2023); *Skilling v. United States*, 561 U.S. 358, 404 (2010); *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). Accordingly, a defendant can be a VTSP only if the alleged rental, sale, or delivery of prerecorded videos is *the* discrete commercial livelihood of the defendant. But by Plaintiff's own allegations, the focus of CoStar's business is "operat[ing] several different consumer real estate platforms" that "showcase available rental properties" (ECF No. 1-1 ¶ 2)—*not renting, selling, or delivering video content* in and of itself.

Courts across the country have determined that to be "engaged in the business" of video content under the VPPA, video content must be a company's "particular field of endeavor." *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (citations omitted); *see also* (ECF No. 14 at 3-4). It is thus not enough that a business "host[] . . . prerecorded videos for the purpose of marketing its products." *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023). The videos must "themselves ***[be] the goods on offer***." *Hernandez v. Container Store, Inc.*, No. No. 2:23-cv-05067-HDV-RAO, 2024 WL 72657, at *2 (C.D. Cal. Jan. 3, 2024) (emphasis added). This distinction—between video content that is itself the product offered and video content that is instead deployed as a means of advertising the product offered—is dispositive. Here, the product is *real estate rental listings*, not videos.

*Mata* and the other non-binding cases Plaintiff cites where a court found a company to be a video tape service provider erroneously failed engage in a close analysis of the statutory language in light of cannons of construction articulated by the Supreme Court for interpreting federal statutes. (ECF No. 20 at 5.) Moreover, *Mata* is distinguishable because here, Plaintiff concedes that video walkthroughs are ***one method*** of advertising rental properties, (Compl. ¶ 17), so the logic that the *Mata* court applied in determining that "the use of video walkthrough tours is essential to [Zillow's] business model" fails here, where video tours are only one method through which CoStar markets rental properties. *Mata v. Zillow Grp., Inc.*, No. 24-CV-01095-DMS-VET, 2024 WL 5161955, at *3 (S.D. Cal. Dec. 18, 2024). At bottom, the videos on CoStar's website are part of CoStar's marketing tools and are not CoStar's particular field of endeavor.

## II. Plaintiff Does Not Allege He Is A "Consumer."

Plaintiff argues he is a "subscriber" under the VPPA because he signed up for a free account, and in exchange, provided his first and last name, email address, and phone number.

(Compl. ¶ 16.) However, Plaintiff does not meaningfully respond to CoStar's argument (ECF No. 14 at 4-5) that Plaintiff failed to allege he is a "subscriber" because he does not allege he paid money for anything, that his account registration resulted in the regular delivery of anything, or that his account registration creates any ongoing commitment or relationship, as required by the multi-factor test articulated in cases like *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015) and *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017)—cases which Plaintiff himself cites. Nor does he meaningfully respond to CoStar's argument that the free account is not a "good" or "service." (ECF No. 14 at 5.) Plaintiff has therefore conceded these points, and CoStar's motion can be granted on these bases.

Even if the Court proceeds past these points, Plaintiff's argument that "goods or services" in the statutory definition of "consumer" should be interpreted to include any and all goods or services a company might offer, and not just audio visual goods or services, is wrong. (Opp. at 6-7). The decisions Plaintiff cites in *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024) and *Gardner v. Me-TV Nat'l Ltd. P'ship*, 132 F.4th 1022 (7th Cir. 2025) cannot be squared with the plain language of the VPPA when viewed in its proper context.

In contrast, the Sixth Circuit recognized that, viewing the phrase "goods and services" in "association with surrounding words cabins its meaning. The full definition of 'consumer' in the statute does *not* encompass consumers of all 'goods or services' imaginable . . . ." *Salazar v. Paramount Glob.*, 133 F.4th 642, 650 (6th Cir. 2025). "[T]***he expression 'goods or services' is limited to audiovisual ones.***" *Id.* at 651. Contrary to Plaintiff's false assertions in his brief, this construction of the term "consumer" adopted by the Sixth Circuit in *Salazar v. Paramount Global*

is consistent with that adopted by the overwhelming majority of federal courts to have addressed the issue,[1] with the Second and Seventh Circuit decisions being outliers.

Here, Plaintiff does not allege that he subscribed to video tours or even that his status as a free account holder was a precondition to accessing the video tours —nor could he do so, since video tours are freely and equally available to any member of the public who visits the website. Rather, Plaintiff alleges he signed up for a free account on CoStar's website, which does not make him a "consumer" under the statute. Because there is no nexus connecting Plaintiff's creation of a

---

[1] *See Brown v. Learfield Commc'ns, LLC*, 713 F.Supp.3d 355, 364 (W.D. Tex. 2024) ("[T]he VPPA only applies to consumers (including subscribers) of audio video services."); *Brown v. Learfield Commc'ns, LLC*, No. 1:23-CV-00374-DAE, 2024 WL 3676709, at *5 (W.D. Tex. June 27, 2024); *Peterson v. Learfield Commc'ns, LLC*, 705 F.Supp.3d 937, 962-63 (D. Neb. 2023) ("This case illustrates the uncomfortable fit of the VPPA to free video streaming services: If Plaintiff accessed free videos on the Team Website by simply typing 'huskers.com' into his web browser, he would undoubtedly not be a 'renter, purchaser, or subscriber of goods or services,' meaning he . . . would have no VPPA claim . . . . However, because Plaintiff 'subscribes' . . . to a free newsletter that contains links to these free videos, which anyone can access on the Team Website without first subscribing to the newsletter, Plaintiff argues that he . . . [is] entitled to . . . $2,500 in liquidated damages . . . ."); *Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1306-07 (N.D. Fla. 2023) (noting status as newsletter subscribers did not demonstrate any "'durable' commitment or any real exchange at all," "Plaintiffs can opt out or ignore the newsletter 'without consequences,'" "[s]igning up does not grant access to any exclusive or restricted content, much less any exclusive video content," and videos on website are "available to anyone"); *Rodriguez v. JP Boden Servs. Inc.*, No. 23-CV-00534-L-VET, 2024 WL 559228, at *3-5 (S.D. Cal. Feb. 12, 2024) ("Thus, the term 'subscriber' must be considered in conjunction with 'goods and services' of a 'video tape service provider' to determine its meaning. . . . Giving the statutory phrase its plain meaning, a 'video tape service provider' is 'in the business... of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials' meaning that the rental, sale or delivery of audio visual materials is a defining feature, or at least not a de minimus feature, of the business."); *Pileggi v. Washington Newspaper Publ'g Co., LLC*, No. CV-23-345 (BAH), 2024 WL 324121, *11 (D.D.C. Jan. 29, 2024); *Heather v. Healthline Media, Inc.*, No. 3:22-cv-05059-JD, 2023 WL 8788760, *2 (N.D. Cal. Dec. 19, 2023); *Kuzenski v. Uproxx LLC*, No. 2:23-CV-00945-WLH-AGR, 2023 WL 8251590, 5 (C.D. Cal. Nov. 27, 2023); *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023); *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061-62 (S.D. Cal. 2023); *Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1232-33 (S.D. Cal. 2023); *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023).

free account to the publicly available video tours he viewed, Plaintiff is not a "consumer" under the VPPA.

**III. Plaintiff Does Not Allege That CoStar Knowingly Disclosed PII.**

**A. Plaintiff Fails To Allege Any Information Constitutes PII.**

Plaintiff's argument that his "numerous factual allegations" have been recognized by courts as sufficient to survive a motion to dismiss suffers from an insurmountable problem: he does not, and cannot, identify these *factual* allegations in response because there *are no* factual allegations, only legal conclusions. (Opp. at 9.)

Plaintiff identifies four paragraphs of the Complaint that purportedly contain factual assertions. (Opp. at 9 (citing Compl. ¶¶ 21-24).) But as CoStar noted in its opening motion, these paragraphs simply parrot the terms "identity" and "PII" while failing to identify *what* information allegedly been disclosed. (ECF No. 14 at 6-8). To allege a VPPA claim, Plaintiff must include factual allegations supporting that the information at issue in this case is information covered by the VPPA. But the only specific factual allegation in the Complaint concerning what was shared is the image Plaintiff includes in Paragraph 23 of the Complaint—which, on its face, does not include any information that identifies Plaintiff, much less information that identifies Plaintiff and links him to having watched a specific video. (Compl. ¶ 23; ECF No. 14 at 7.)

Plaintiff's attempt to use out-of-context references in CoStar's privacy policy do not save his claim. The privacy policy, which Plaintiff selectively quotes and has incorporated by reference in his Complaint, uses permissive language: CoStar ***may*** disclose, collect, etc. (*See* Compl. ¶ 25 n.3 (citing https://www.apartments.com/grow/about/privacy-notice).) *See Dobles v. Black Hills Corp.*, 696 F. Supp. 3d 750, 755 (D.S.D. 2023) ("When ruling on a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may 'consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, items

appearing in the record of the case, and exhibits attached to the complaint.'") (quoting *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up)). In other words, the privacy policy does not say that any specific information actually *was* disclosed—not in the full policy or in the excerpts Plaintiff includes in the Complaint. As explained above, the only specific information which Plaintiff alleges was shared is the computer code depicted in the image in Paragraph 23 of the Complaint, which is not PII as defined by the VPPA.

Significantly, the Second Circuit recently reaffirmed that "*Solomon* effectively shut the door for Pixel-based VPPA claims." *Hughes v. Nat'l Football League*, No. 24-2656, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025). "While Hughes asserts that a viewer's FID can be identified based on the string of numerals following the 'c_user' field, it 'is not plausible that an ordinary person, without [ ] annotation ... , would see the "c_user" phrase on [this communication] and conclude that the phrase was a person's FID.'" *Id.* at *3 (quoting *Solomon v. Flipps Media*, 136 F.4th 41, 54 (2d Cir. 2025). *Solomon* and *Hughes* remain the only appellate court cases to address whether Facebook Pixel transmissions like the ones at issue in this case constitute PII under the VPPA—and both held they do not.

This Court should decline to follow the district court decisions[2] which have allowed Facebook Pixel VPPA claims to proceed because the "'ordinary person' test better informs video service providers of their obligations under the VPPA . . . It looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). "'[P]ersonally identifiable information' must have the same meaning without regard to its recipient's capabilities. Holding

[2] Many of the district court cases which Plaintiff cites are from the Southern District of New York, predate *Solomon* and *Hughes*, and consequently are no longer good law. (ECF. 20 at 10, 12.)

otherwise would make '[t]he lawfulness of [a] disclosure . . . depend on circumstances outside of [a video service provider's] control.'" *Id.* (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)). There is no basis in the statutory text to hold information which does not itself identify a person can somehow constitute "information which identifies a person" merely because it might theoretically be possible to use that information to launch an investigation attempting to identify a person.

Further, *Manza v. Pesi, Inc.*, No. 24-cv-690-JDP, 2025 WL 1445762 (W.D. Wis. May 20, 2025), is not on point because the Court's analysis disregarded the statutory language of the VPPA. In determining that "a test that asks whether the information ***aids*** in uniquely identifying the customer is objective and focuses on the nature of the information rather than on speculation about a third party[,]" 2025 WL 1445762, at *7 (emphasis added), the *Manza* court lost sight of the statutory text: "the term 'personally identifiable information' includes information which identifies a person . . .", 18 U.S.C. 2710(a)(3). The question is not whether the information can ***aid*** a person in identifying the customer, the question is whether an ordinary person look at the information and *identify* a specific individual and their video-viewing behavior without a multi-step inquiry.

### B. CoStar Did Not Knowingly Disclose PII.

Plaintiff argues he has adequately pled that CoStar knowingly disclosed PII because "Defendant knowingly installed its tracking technology and knowingly transmitted VPPA incriminating PII." (Opp. at 8.) Yet Plaintiff does not contest CoStar's argument that CoStar has no way to know whether Plaintiff—or any users—had FIDs, much less what those FIDs were, or whether Plaintiff set his browser to allow Facebook cookies. (ECF No. 14 at 8.)

## IV. Plaintiff Fails to Allege Actual Damages.

The language of the VPPA under which Plaintiff seeks relief in this case makes clear a plaintiff must establish actual damages to recover under the statute: "[t]he court may award actual

damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). This language does not create two separate and independent avenues for recovery; it establishes that actual damages must be alleged and proven. The Supreme Court squarely addressed this issue in construing a federal statute with similar language in *Doe v. Chao*, 540 U.S. 614 (2004), where it held that actual damages are a prerequisite to recovering the statutory amount. *Id.* at 627; *see also* Mot. at 14-15.

*Doe*'s reasoning applies with full force here, making clear that Plaintiff cannot bypass the requirement to plead actual damages by simply asserting a right to other types of damages. Indeed, courts applying *Doe* have held a plaintiff must establish actual damages in order to be entitled to relief under the statute. *See, e.g.*, *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872 (11th Cir. 2009) (requiring a showing of pecuniary harm to recover for Privacy Act violation). It would make no sense to allow a person who has suffered no actual damages to recover statutory liquidated damages, punitive damages, attorneys' fees and costs, or equitable relief—because the predicate for recovery under the language of the VPPA is actual damages.

The non-binding *Saunders* decision that Plaintiffs cites misapplies *Doe* and *Fanin* and does not address the Supreme Court's emphasis that its interpretation of the damages language in *Doe* turned on the presence of the phrase "actual damages" in the statute, *see Doe*, 540 U.S. at 623 n.8—the phrase that is also present in the VPPA's damages provision.

## V. The VPPA Violates The First Amendment.

The VPPA imposes suspect content- and speaker-based restrictions subjecting the law to strict scrutiny. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see also Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1307-08 (11th Cir. 2017). In *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020), the Court defined a content-based law as one that "'on its

face' draws distinctions based on the message a speaker conveys," 591 U.S. at 618 (citation omitted). In other words, one must read the communication's content to know whether it is banned. *See id.* at 618–19. Likewise, the VPPA discriminates based on the message the speaker conveys because it prohibits communications that disclose video choices and not other types of communications. Ultimately, the *Barr* court applied strict scrutiny to strike down a similar law banning robocalls because that law imposed an impermissible content-based restriction. *Id.* at 621.

Plaintiff attempts to frame the VPPA as a statute that regulates ordinary commercial activity, (Opp. at 14), but the VPPA broadly restricts the dissemination of information. Further, Plaintiff does not adequately support his invocation of intermediate scrutiny over strict scrutiny. He asserts "intermediate scrutiny is appropriate because Defendant's speech is commercial and only concerns a private matter." (Opp. at 13.) But *Barr v. Am. Ass'n of Pol. Consultants, Inc.* and *Reed v. Town of Gilbert, Ariz* make clear "*content-based*" distinctions "are subject to strict scrutiny" and governments have "ample content-neutral options available to resolve problems" they attempt to resolve with content-based restrictions. *Barr v. Am. Ass'n of Pol. Consultants, Inc*., 591 U.S. 610, 618 (2020); *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 172-73 (2015). "The appropriate standard of review for such a regulation hinges on whether the regulation is content based, which requires us to apply strict scrutiny, or content neutral, which demands only an intermediate level of scrutiny." *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949 (7th Cir. 2015). Because the VPPA is content-based, strict scrutiny applies. Plaintiff makes no argument that the VPPA can survive strict scrutiny.

In any event, the VPPA fails intermediate scrutiny. Plaintiff cites *Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995), for the proposition that intermediate scrutiny applies, but that case delineates precisely why the VPPA fails. In *Florida Bar* the court held that "a governmental body

seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real" with "evidence." *Florida Bar*, 515 U.S. at 626; *see also El Dia, Inc. v. Puerto Rico Dep't of Consumer Affs.*, 413 F.3d 110, 115 (1st Cir. 2005) (requiring "evidence, other than conclusory assertions"); *Edenfield v. Fane*, 507 U.S. 761, 771 (1993); *Alexander v. Cahill*, 598 F.3d 79, 92 (2d Cir. 2010); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 n.12 (10th Cir. 2005). As CoStar explained in its opening brief, Congress cited just two incidents in the legislative history as a basis for the VPPA, only one of which involved video-rental disclosure and neither of which resulted in harm. (ECF No. 14 at 13.)

Even if the privacy interest were sufficiently substantiated (and it is not), the VPPA is not adequately tailored to protect it. Plaintiff does not meaningfully address the VPPA's failure to protect privacy in consumers' choices of images, books, or music. (ECF No. 14 at 14.) This under-inclusivity "diminish[es] the credibility of the government's rationale for restricting speech in the first place." *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994). Plaintiff points to a single district court decision upholding the VPPA, (Opp. at 14-15), but Plaintiff's reliance on *Saunders* is misplaced. In *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24 (D. Mass. 2024), that court was not presented with an argument about the VPPA's under-inclusivity. *Id.* at 32–33. Even Supreme Court decisions do not stand for propositions they do not decide, *see, e.g.*, *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1282–83 (11th Cir. 2020), so a district court decision cannot be persuasive on a point it does not address, *cf. UMB Bank, N.A. v. MacMillin Co., LLC*, 654 B.R. 824, 833 n.8 (D.N.H. 2023) (stating familiar rule that district court decisions are not binding).

Plaintiff also cites *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016), which address a Michigan statute that is materially different from the VPPA in a number of ways.

First, the Michigan statute at issue in *Boelter* explicitly defines "customer" as "an individual who purchases, rents, or borrows a book, other written material, a sound recording or a video recording." Mich. Comp. Laws. 445.1711(a). In other words, the Michigan statute clearly and explicitly limits its application to individuals who have purchased, rented, or borrowed a specific type of content. This is different than the VPPA, which more vaguely defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Second, the Michigan statute's disclosure restrictions apply to "a person . . . engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings." Mich. Comp. Laws 445.1712(1). The VPPA, in contrast, applies to "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). The VPPA's references to "delivery" and "similar audio visual materials" make the VPPA materially different than the Michigan statute. Third, the Michigan statute only requires "written permission of the customer." *See* Mich. Comp. Laws 445.1713(a). This is vastly different from the consent requirements found in the VPPA, which requires consent "that—(i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer—(I) is given at the time the disclosure is sought; or (II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and (iii) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2)(B). Plaintiffs' citation to these cases, therefore, only underscores that the VPPA—which involves the same purported

government interest as the Michigan statute—is not appropriately tailored to advance that purported interest.

Accordingly, the VPPA violates the First Amendment and Plaintiff's claims should be dismissed.

**CONCLUSION**

Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Dated: July 7, 2025

Respectfully submitted,

By: */s/ Bonnie Keane DelGobbo*

Colby M. Everett #72403 (MO)
**Baker & Hostetler LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Tel: (303) 861-0600
Fax: (303) 861-7805
ceverett@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
**Baker & Hostetler LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606
Tel: (312) 416-6200
Fax: (312) 416-6201
bdelgobbo@bakerlaw.com

*Attorneys for Defendant CoStar Realty Information, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, July 7, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Bonnie Keane DelGobbo*
Bonnie Keane DelGobbo