UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DESMOND BANKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | No. 4:25-cv-00564-CMS |
| ) | |
| **COSTAR REALTY INFORMATION, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORDANDUM AND ORDER

Before the Court is the Motion to Dismiss for Failure to State a Claim of Defendant CoStar Realty Information, Inc. ("CoStar"). (Doc. 13). For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

According to Plaintiff's Petition, Plaintiff had accounts with one of CoStar's websites, apartments.com, and with Facebook. (Doc. 5 at 8). During the past year, Plaintiff has used his apartments.com account to view prerecorded video tours. (Doc. 5 at 8).

Plaintiff alleges that CoStar's website uses multiple pixels, including the Meta Pixel shown below. (Doc. 5 at 5). The Meta Pixel is a piece of code that CoStar has integrated into its website, which, once activated, will track the activity of a person accessing the website. (Doc. 5 at 5–6). It then will send that information to Facebook in

1

the form of a URL which contains details about the content accessed, including in this case, a video watched, and an ID code:



(Doc. 5 at 6).

Plaintiff alleges that when he watched videos on apartments.com, CoStar disclosed his information, including which videos he watched on apartments.com, to third parties, though he specifically names only Facebook and TikTok.[1] (Doc. 5 at 5–6). Plaintiff admits that he "is unaware of the status of his [information], to whom it has been

---

[1] Plaintiff does not allege that he has ever had a TikTok account.

disclosed, and who has possession and retained his [information] as a result of Defendant's . . . disclosures." (Doc. 5 at 9).

Plaintiff filed the instant action in the Circuit Court of St. Louis City against Defendant CoStar. (Doc. 1 at 1). Subsequently, CoStar removed the case to this Court. *Id.* In his Petition, Plaintiff brings a claim against CoStar, claiming that CoStar violated 18 U.S.C. § 2710 by disclosing Plaintiff's personal identifying information ("PII") to third parties. (Doc. 5 at 1, 9). Plaintiff's first and only count requests (i) declaratory relief; (ii) injunctive and equitable relief; (iii) statutory damages of $2,500 per violation of 18 U.S.C. § 2710(b); and (iv) attorneys' fees and costs and other litigation expenses.

## ANALYSIS

Defendant CoStar filed a Motion to Dismiss for Failure to State a Claim seeking dismissal of Plaintiff's Petition with prejudice. (Doc. 13). For a complaint to survive a motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 555, 570, 127 S.Ct. 1955 (2007)); *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010). The facts in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Park Irmat Drug Corp. v.*

3

*Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012)).

On a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiffs." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008) (quoting *Gunter v. Morrison*, 497 F.3d 868, 873–74 (8th Cir. 2007)). The Court may also consider documents attached to the complaint and materials necessarily embraced by the pleadings. *Park Irmat Drug Corp.*, 911 F.3d at 512.

Congress passed 18 U.S.C. § 2710, or the "Video Privacy Protection Act" ("VPPA"), in 1988, in the wake of the *Washington City Paper* publishing Judge Robert Bork's video rental history during his Supreme Court nomination proceedings. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). A violation of Section 2710(b)(1) occurs when a "video tape service provider . . . knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider . . . ." Section 2710(c) of the VPPA creates a civil action for the aggrieved person against any violator of the Act.

Plaintiff's claim rests on three contentions: First, that CoStar, through its website, apartments.com, is a "video tape service provider." (Doc. 5 at 12). Second, that Plaintiff is a "consumer" as defined by Section 2710(a)(1). *Id.* And third, that CoStar disclosed "personally identifiable information," as defined by Section 2710(a)(3), to third party advertisers. *Id.* In deciding each of these questions, this Court must interpret the relevant subsections of the VPPA as a matter of law. *Ark. Times LP v. Waldrip as Tr. of Univ. of*

4

*Ark. Bd. of Trs.*, 37 F.4th 1386, 1392 (8th Cir. 2022); *see also Duncan v. Jack Henry & Assocs., Inc.*, 617 F.Supp.3d 1011, 1054 (W.D. Mo. 2022) ("Thus, what controls is the statutory interpretation of the term 'gender identity disorders' as used within § 12211(b)(1)'s exclusionary provision, a question of law rather than fact.").[2]

*CoStar is Not a "Video Tape Service Provider."*

CoStar is not a "video tape service provider" under the VPPA. Plaintiff's argument that CoStar is a "video tape service provider" relies on several cases, most importantly *Mata v. Zillow Grp. Inc.*, 2024 WL 5161955 (S.D. Ca. Dec. 18, 2024). Those cases broadly interpret the language of Section 2710(a)(4) to include websites like apartments.com, which concededly have "non-video aspects to their business model." (Doc. 20 at 4–5) (citing cases); *see also*, *e.g.*, *Salazar v., Nat'l Basketball Ass'n*, 118 F.4th 533, 548 (2d Cir. 2024). As discussed below, Plaintiff's reliance on *Mata* is misplaced because *Mata* misinterprets the language of Section 2710(a)(4).

Section 2710(a)(4) defines a "video tape service provider," in pertinent part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." Because the terms " business," "delivery," and "similar" are undefined, this Court looks to their plain meaning at the time of the VPPA's enactment. *See United States v. Torres*, 920 F.3d 1215, 1216 (8th Cir. 2019); *Jam v. Int'l Fin. Corp.*, 586 U.S.

---

[2] Though both parties cite cases from various circuit and district courts, this Court's independent research shows that 18 U.S.C. § 2710 has never been interpreted by the Eight Circuit. This is an issue of first impression, and the caselaw cited by the parties is merely persuasive.

199, 209 (2019) (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)) (The "legislative purpose [of a statute] is expressed by the ordinary meaning of the words used."); *Sanzone v. Mercy Health*, 954 F.3d 1031, 1041 (8th Cir. 2020) (citing *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277–78 (2018)) (The Court begins its "ordinary meaning inquiry with the simple dictionary definition from the time of the statute's enactment.").

The plain language of Section 2710(a)(4) requires that a "video tape service provider" is "in the business . . . of rental, sale, or delivery of" not just any sort of video medium, but specifically "prerecorded video cassette tapes or similar audio visual materials." No one argues here that CoStar is in the business of rental, sale, or delivery of video cassette tapes, or that CoStar is in the business of rental or sale of any audio visual material. Accordingly, the only remaining question is whether CoStar is "in the business . . . of . . . delivery of . . . audio visual materials" similar to prerecorded video cassette tapes.

First, "delivery" at the time of the VPPA's enactment meant, most relevantly, "2a: the act of delivering up or over: transfer of the body or substance of a thing: SURRENDER . . ." *Delivery*, Webster's Third New International Dictionary (1981). Here, CoStar undisputedly "transfer[s] the . . . substance" of its video tours, though it does so virtually through the internet.

Next is the question of whether the audio visual materials CoStar delivers are "similar" to video cassette tapes. Given that Congress chose to include the word "similar," this Court must give effect to that word. *See Ransom v. FIA Card Servs., N.A.*,

6

562 U.S. 61, 70 (2011) (quoting *Leocal v. Ashcroft,* 543 U.S. 1, 12 (2004)); *see also Pileggi v. Wash. Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1238 (D.C. Cir. 2025) (Randolph, J., concurring) ("'Similar' cannot mean 'other.' The VPPA's use of 'similar' requires something more than a vague resemblance between the videos at issue in this case and a 'prerecorded video cassette tape[ ].'"). The relevant definition of "similar" is "1: having characteristics in common; very much alike; comparable." *Similar*, *Webster's Third New International Dictionary* (1981). Thus, for this Court to consider CoStar a "video tape service provider," CoStar must "be in the business . . . of . . . delivery of" audio visual materials "having characteristics in common" with video cassette tapes, beyond the mere fact that they are "audio visual materials" of any kind.

This is where Plaintiff's reliance on *Mata* is misplaced. *Mata*, in its analysis of whether Zillow is a video tape service provider, omits key statutory language from its analysis. *Mata*, 2024 WL 5161955 at *2. *Mata* quotes Section 2710(a)(4) as defining "video tape service provider" as "engaged in the business ... of ... delivery of ... audio visual materials." *Id.* In doing so, *Mata* omits the statutory phrase "prerecorded video cassette tapes or similar" preceding "audio visual materials." *Id.* By this omission, *Mata* improperly changes the definition of "video tape service provider" from one who engages "in the business . . . of . . . delivery of prerecorded video cassette tapes or" audio visual materials that are comparable to prerecorded video cassette tapes to one who engages in the business of delivering any type of audio visual material.

Here, the videos alleged by Plaintiff are not comparable to prerecorded video cassette tapes beyond their being audio visual materials. Though some of the video tours

7

are prerecorded, (Doc. 5 at 8), which is a quality shared with prerecorded video cassette tapes, the videos on apartments.com are not similar to prerecorded video cassette tapes. Video clips transferred via the internet have little in common with a physical medium like a video cassette, particularly in the context of the VPPA. "When interpreting a statute, we must also consider the statutory context in which the words in question appear . . . including both 'the specific context in which th[e] language is used, and the broader context of the statute as a whole.'" *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 807 (8th Cir. 2021) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

The statutory context here includes the consistent mention of the noun phrase "video tape": from the title "Wrongful disclosure of video tape rental or sale records," to the term "video tape service provider," to the term "prerecorded video cassette tapes." 18 U.S.C. § 2710(a)(4). The language of Section 2710(a)(4) and its statutory context demonstrate that "audio visual materials" must be stored in a physical format to be "similar" to "prerecorded video cassette tapes." *See Pileggi*, 146 F.4th at 1239 (Randolph, J., concurring) ("Instead, the proper inference is that 'similar[ity]' to a 'prerecorded video cassette tape[ ]' entails the type of audio visual materials that Congress did contemplate: physical data formats like cassette tapes, laser discs, compact discs, [etc.]. In today's digital world, those analog mediums have no analogue medium.").

Additionally, even if the prerecorded videos on apartments.com were "similar audio visual materials" to "prerecorded video cassette tapes," CoStar still is not "in the business . . . of . . . delivery of prerecorded video cassette tapes or similar audio visual

8

materials." The ordinary meaning of "business" is "[1.]b(1): a usual commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision: OCCUPATION: POSITION: TRADE: LINE." *Business*, *Webster's Third New International Dictionary* (1981).³

Plaintiff alleges in his Petition and Response that CoStar is in the business of "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" because it allows rental listers to post prerecorded video tours to its site as one way to showcase their properties to potential renters. (Doc. 5 at 4). In support of his argument that CoStar is in the business of delivering audio visual materials similar to video cassette tapes, Plaintiff includes a link to apartments.com, which encourages property owners and operators to provide virtual tours of their properties and discusses the types of virtual tours owners can offer potential renters. *See* (Doc. 5 at 4) (citing Apartmentology, Does Your Property Offer Virtual Tours? Why You Should Consider It, (June 10, 2024), https://www.apartments.com/grow/learning-center/virtual-touring-importance).

The article cited by Plaintiff demonstrates, more than anything, that prerecorded video tours are a fraction of a fraction of how CoStar conducts its business. Apartmentology, *supra*. Two types of tours offered are not remotely "comparable" to

---

³ Though there is a preceding definition 1.a. in *Webster's Third*, it is not appropriate in this context because it addresses only non-commercial meanings of "business." *See Business*, *Webster's Third New International Dictionary* (1981).

prerecorded video cassette tapes. One is a "real-time guided tour with a leasing agent," which is not prerecorded; the other is an "on-demand 3D tour" which is not described as a "video." *Id.* The third type of tour offered, and arguably the closest to being "comparable" to prerecorded video cassette tapes, is the prerecorded video tour. *Id.*

The prerecorded videos that CoStar delivers are in service of its business, but that does not render CoStar "in the business" of delivering them. Though Plaintiff concludes in his Response that "the delivery of video walkthrough tours is essential to Defendant's business model[,]" (Doc. 20 at 4), the facts Plaintiff alleges point to a different conclusion: prerecorded video tours are not, as Plaintiff claims, CoStar's "primary method" of connecting property owners and potential renters, (Doc. 20 at 3).

Other language on the Apartmentology webpage betrays that CoStar really is "in the business" of "connect[ing] housing-seekers with property owners and managers . . . ." (Doc. 14 at 3). The article touts the importance of the virtual tour as one of the ways for property owners to "giv[e] renters a comprehensive look at [their] community[,]" to "reach renters who live outside [their] local market and can't easily travel to [their] property for an onsite tour[,]" and to "show renters that [their] community is forward-thinking and technologically savvy." Apartmentology, *supra*. While Plaintiff alleges that CoStar encourages its users to offer video tours (both live and prerecorded), the article reveals that CoStar is in the business of connecting property owners and renters, not the delivery of prerecorded video materials similar to video cassette tapes. *Id.*

In this respect, Plaintiff's reliance on *Mata* again is misplaced. District courts within the Ninth Circuit have developed a test that, to plead that the defendant has

10

"engaged in the business ... of ... delivery of ... audio visual materials[,]" "the plaintiff must sufficiently allege that the defendant's products are specifically tailored to serve audiovisual material." See *Mata*, 2024 WL 5161955 at *2 (internal quotations omitted) (listing cases). This test strays from the plain language of the VPPA and, as a consequence, a defendant need not be "in the business" of renting, selling, or delivering "prerecorded video cassette tapes or similar audio visual materials" to be liable.

Instead, a defendant can be liable under the VPPA so long as its "'conveyance of video content [of any type]' is 'significantly tailored' to its business purpose . . . ." *Id.* at *3 (quoting *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F.Supp.3d 1204, 1221 (C.D. Cal. 2017)). That is so even if the "business purpose" is completely unrelated to the "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" required by the VPPA. *Id.* This test, then, is incompatible with the text of Section 2710(a)(4).

Thus, CoStar is not a "video tape service provider" under Section 2710(a)(4) because it is not "in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."

*Plaintiff is Not a "Consumer."*

Plaintiff is not a "consumer" under the VPPA. Section 2710(a)(1) defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]" Since this Court has already decided that CoStar is not a "video tape service provider," it follows as a matter of course that Plaintiff is not a "consumer" under the VPPA.

11

Even if CoStar was a "video tape service provider," Plaintiff still is not a "consumer" under the VPPA. Plaintiff alleges that he is a "subscriber" to CoStar. The plain meaning of "subscriber" is "one that subscribes: as a: one that signs something (letter, document, or agreement) b: one that agrees or consents . . . ." *Subscriber*, *Webster's Third New International Dictionary* (1981). Thus, a subscriber is someone who signs an agreement or makes some sort of agreement. Here, Plaintiff alleges that he made an account on apartments.com and therefore made an agreement with CoStar. (Doc. 5 at 8).

Plaintiff cites *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024), in support of his argument that his being a subscriber to apartments.com also makes him a consumer under the VPPA. (Doc. 20 at 6–7). The *Salazar* court's reasoning is unpersuasive.[4] First, the court reads the words "*any* renter, purchaser, *or* subscriber of goods or services" to mean that the entire definition of "consumer" is broad, including "goods or services." *Id.* at 546 (emphasis in original). It does this, however, while disregarding the phrase "from a video tape service provider" and removing "goods or services" from the context of Section 2710. The court also ignores the very title of the statute: "Wrongful disclosure of video tape rental or sale records[.]"

---

[4] Plaintiff also cites *Krueger v. Chess.com*, No. 1:24-cv-05722, 2025 WL 2765375 (N.D. Ill. Sept. 28, 2025). The district court in *Krueger* was bound by Seventh Circuit precedent which, like *Salazar*, misinterprets "goods or services" more broadly than the statute allows. *Id.* at *3 (citing *Gardner v. Me-TV Nat'l Ltd. P'ship*, 132 F.4th 1022, 1024 (7th Cir. 2025)).

12

This Court finds the D.C. Circuit's reasoning in *Pileggi*, 146 F.4th at 1232–33, more persuasive. There, the court found that "goods and services" should be read narrowly in the context of how they are offered by a "video tape service provider." *Id.* Specifically, it held that "a 'consumer' of a 'video tape service provider' is someone who 'rent[s], purchase[s], or subscribe[s]' to the 'good or service' that a 'video tape service provider' offers-that is, 'video cassette tapes or similar audio visual materials.'" *Id.* at 1232 (quoting 18 U.S.C. § 2710).

The necessary context provided by the phrase "goods or services" supports a narrow reading. *See Designworks Homes, Inc.*, 9 F.4th at 807 (quoting *Robinson*, 519 U.S. at 341). Again, Section 2710(a)(1) requires that "goods and services" come "from a video tape service provider." Section 2710(a)(4) defines a "video tape service provider" as someone "in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." And the title of the statute is "Wrongful disclosure of video tape rental or sale records[.]" As explained in *Pileggi*, 146 F.4th at 1233, "the noun 'video' suffuses the statute, independently indicating that the relevant good that a consumer subscribes to must be a video, not just any good or service provided by someone who also happens to offer video or audio-visual services."

Though Plaintiff alleges he has an account on apartments.com and therefore is a subscriber to a service provided by CoStar, Plaintiff never alleges that this account is a subscription to CoStar's video services. *See* (Doc. 5 at 8). Pursuant to the plain language of Section 2710(a)(1), Plaintiff is not a "consumer."

*Costar Did Not Disclose Plaintiff's PII.*

13

Section 2710(a)(3) requires that the information disclosed "identifies a person as having requested or obtained specific video materials or services from a video tape service provider . . . ." Section 2710(b)(1) then makes liable video tape service providers who "knowingly disclose[], to any person, personally identifiable information concerning any consumer of such provider . . . ."

The circuits are split on this issue and have developed two diverging tests for determining whether a video tape service provider has disclosed a consumer's PII.[5] This Court adopts neither of the tests because, at least in this case, both are unnecessary and appear to be extra-textual.[6] According to the statute, central to this analysis is whether the information allegedly provided by CoStar to Facebook through the Meta Pixel "identifies" Plaintiff as having "requested or obtained specific video materials or services" from CoStar. The applicable ordinary meaning of "identify" is "2c(1): to

---

[5] The First Circuit has adopted the "reasonable foreseeability standard." *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). This tests whether the video tape service provider "disclosed information reasonably and foreseeably likely to reveal which . . . videos [the plaintiff] obtained." *Yershov*, 820 F.3d at 486. The Second, Third, and Ninth Circuits, on the other hand, have adopted the "ordinary person standard." *In re Nickelodeon*, 827 F.3d at 290 (3d Cir.); *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54–55 (2d Cir. 2025); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). This standard limits "personally identifiable information" to the "kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon*, 827 F.3d at 290.

[6] *See, e.g.*, *Yershov*, 820 F.3d at 486 ("The statutory term 'personally identifiable information' is awkward and unclear. The definition of that term ('identifies a person as having [obtained a video]') adds little clarity beyond training our focus on the question whether the information identifies the person who obtained the video."); *see also, e.g.*, *Solomon*, 136 F.4th 41, 48 (internal citations omitted) ("Courts across the country . . . have observed that the VPPA is ' "not well drafted," ' and that its definition of personally identifiable information is 'oblique[ ]' and not 'clear,' . . . .").

14

establish the identity of . . .: show or prove the sameness of." *Identify*, *Webster's Third New International Dictionary* (1981).

Nowhere does Plaintiff allege what information is conveyed by the Meta Pixel ID code or, specifically, that the ID code inherently identifies Plaintiff. Plaintiff does not allege how the Meta Pixel links the string of character in the ID code to a Facebook account or to which Facebook account. Nor does he allege anything about any personally identifiable information contained in his Facebook account. Therefore, the Meta Pixel ID code does not "identify" Plaintiff. That is, according to Plaintiff's Petition, the ID code, in and of itself, does not "establish the identity of" or "show or prove the sameness of" Plaintiff's activity on apartments.com; it merely establishes a connection to a Facebook account that may or may not contain information identifying Plaintiff.[7]

Finally, even if the information CoStar disclosed to Facebook identified Plaintiff "as having requested or obtained specific video materials or services from" CoStar, that information is not PII. PII, definitionally, is constrained to "specific video materials or services . . . from a video tape service provider," which, as already established, CoStar is not.

## CONCLUSION

---

[7] Though this Court ultimately reaches the same conclusion as the Second Circuit, *see Solomon*, 136 F.4th at 54–55 (finding that a website's disclosure of the plaintiff's Facebook ID did not constitute disclosure of the plaintiff's personally identifiable information under § 2710(a)(3)); *see also Hughes v. Nat'l Football League*, 2025 WL 1720295 at *2–*3 (2d Cir. June 20, 2025) ("*Solomon* effectively shut the door for Pixel-based VPPA claims."), it does so without the need to imagine a fictitious "ordinary person" from whose perspective the information disclosed "identifies" a plaintiff.

15

For all of these reasons, Plaintiff's Petition, as a matter of law, fails to state a claim that CoStar is a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider[,]" under 18 U.S.C. § 2710(b)(1).

**IT IS THEREFORE ORDERED** that Defendant CoStar Realty Information, Inc.'s Motion to Dismiss for Failure to State a Claim, (Doc. 13), is **GRANTED**. Plaintiff Desmond Bank's Petition is **DISMISSED** with prejudice.

Dated this 20th day of October, 2025.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE